[No. 10957.   Department Two.   February 28, 1913.]

W. R. PARKER *et al.*, *Appellants*, v. M. B. BRUGGEMANN *et al.*,
*Respondents.*[1]

FRAUDS, STATUTE OF—BROKER'S COMMISSIONS. A verbal contract
for a broker's commissions, made by one who was equitably a joint
owner of the property, is within Rem. & Bal. Code, § 5289, requiring
contracts for a broker's commissions to be in writing, at least if the
broker knew or should have known of the fact of such joint owner-
ship.

BROKERS — ACTION FOR COMMISSIONS — EVIDENCE — SUFFICIENCY.
Where brokers did not have an exclusive contract, they cannot re-
cover commissions, in the absence of proof that the purchaser was
produced by them or that the sale was the result of their efforts.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered June 22, 1912, dismissing an
action on contract, after a trial to the court. Affirmed.

*John P. Hartman*, for appellants.

*Douglas, Lane & Douglas*, for respondents.

ELLIS, J.—Action for a balance of commissions claimed
to be due upon an exchange of real estate. The plaintiffs
were real estate brokers, operating in Island county, Wash-
ington. The defendants were doing a general real estate
business in the city of Seattle. The plaintiffs had listed for
sale a tract of land on Whidby island, containing about 549
acres. They approached the defendants with a view to sell-
ing them this land at a price of $15 an acre, and were in-
formed that the defendants did not have sufficient money to
make the purchase, but would endeavor to get some one to
go in with them, put up the money, and buy the land. Such
an arrangement was finally made by the defendants with one
Ernest Carstens, a banker of Seattle, who advanced $2,000,
took the title in his own name, and gave a mortgage upon the
land for the balance of the purchase price, with the under-

[1]Reported in 130 Pac. 358.

standing that he was to be repaid his money with interest, and he and the defendants would be joint owners of the land subject to this charge, and would share equally in any profits made upon the venture. The defendants were to have the management of the land, and endeavor to make a sale of it so as to realize a profit for themselves and Carstens. Carstens testified to the same agreement. This agreement seems to have been verbal; or, if any memorandum of it was made, it was never recorded. The plaintiffs claim that they knew nothing of this agreement, and thought Carstens was purchasing for himself alone, and that the defendants were merely his agents. The plaintiff Parker, however, in his testimony referred to the sale as a sale to the defendants and Carstens. Moreover, the plaintiffs brought a prior action for this same commission against the Bruggemanns and Carstens as owners, and took a voluntary dismissal. We think the evidence at least tends to justify a belief that the plaintiffs knew the nature of the defendants' agreement with Carstens.

After the transfer of the land to Carstens, in March, 1910, the plaintiffs and the defendants entered into a verbal arrangement to again sell the lands, the plaintiffs to act as respondents' agents at Oak Harbor, Whidby island, and to receive as their commission ten per cent of the sale price. Both parties concede that nothing was said as to the agency being exclusive. So far there was little dispute as to the facts. There was, however, as to the following particulars, a sharp conflict in the evidence. Both the plaintiffs testified that this arrangement was unlimited as to time, while both the defendants testified, that it was limited to a period of six months from the transfer to Carstens; that the plaintiffs represented that they could sell in three to six months, but wanted an agreement for one year; that the defendants refused to give any written agreement, but did agree verbally that, if the plaintiffs sold the land within six months, they would be allowed a commission of ten per cent. The plain-

tiffs testified to the effect that they were merely to aid in making sales, and were to receive their commissions on sales made to any purchaser sent to them by the defendants to be shown the land. The defendants testified in effect that the commissions were to be paid only on sales to purchasers procured by the plaintiffs. Circulars were sent out by the defendants, advertising the advantages of the land and referring to the plaintiffs as resident agents. When these circulars were sent out, is not made plain, but that they were still in circulation when the transaction upon which the commission is claimed took place, seems clear.

Within six months after this agreement was made, the plaintiffs, through their own efforts, found a purchaser and sold thirty acres of the land for $50 an acre. The sale was approved by the defendants, and the plaintiffs were paid $150 commission out of the purchase price. In order to facilitate further sales, the defendants, apparently at the plaintiffs' suggestion, had the remaining land surveyed into forty-acre tracts, the defendants paying the expense of the survey. No further sales were made within the six months, and the defendants testified that, at about the expiration of that time, they verbally notified the plaintiffs that the arrangement was at an end. Both of the plaintiffs denied that any such notice was given. After the expiration of the six months, the defendants were approached by West & Wheeler, a real estate firm of Seattle, with an offer on the part of one Murphy, a client of the last mentioned firm, to exchange certain real estate in Seattle for the remaining 519 acres of the Whidby island land. The defendants and Carstens examined the Seattle property and were satisfied to make the exchange, assuming a $6,000 mortgage upon it if Murphy would assume a mortgage for something more than that amount upon the land. The exchange was finally made on these terms. Prior to this time, Wheeler and the two defendants had visited the land and gone over it in company with the plaintiff Parker. In February, 1911, Wheeler and

Murphy visited the island and examined the land. Wheeler testified that Parker, of his own accord and without request from either Wheeler or Murphy, went with them to the land. This seems to have been all that was done by either of the plaintiffs in connection with this exchange, except that when the deeds in exchange were made, Parker had the deed of the land and a power of attorney recorded and the abstract extended to show these, the fees being paid by the defendants. The defendants paid West & Wheeler a commission of $500 for their services in connection with the exchange, but refused to pay the plaintiffs any commission thereon. The Seattle property exchanged for the land was estimated at a value of about $25,000. The plaintiffs sued for a commission of $2,604. The cause was tried to the court without a jury. The court, after hearing all of the evidence, dismissed the action and awarded the defendants their costs. The motion for new trial being overruled, the plaintiffs have appealed.

The appellants contend that the respondents were interested in the land merely as agents for Carstens, and only to the extent of a commission on any sale, to be measured by one-half of the net profits; that therefore, under the rule announced in *Orr v. Perky Inv. Co.*, 65 Wash. 281, 118 Pac. 19, and followed in *Leigh v. Yancey*, 67 Wash. 18, 120 Pac. 512, holding valid verbal agreements between real estate agents to divide commissions, they were entitled to the commission verbally agreed upon in this case. The respondents contend that, under the evidence, they were joint owners with Carstens, and as such managing the joint enterprise for themselves and Carstens, and that therefore the verbal agreement to pay a commission, even if held to apply to the exchange in question, was unenforcible as falling within the purview of the statute, Rem. & Bal. Code, § 5289, requiring an agreement employing a broker to sell real estate to be in writing. Unquestionably, if the respondents and Carstens were joint owners of the land, and if the appellants knew or should have known that fact, the agreement to pay the com-

mission could only be proved by a written contract, and the respondents' contention must be sustained under the uniform decisions of this court. *Keith v. Smith,* 46 Wash. 131, 89 Pac. 473; *Briggs v. Bounds,* 48 Wash. 579, 94 Pac. 101; *Ross v. Kaufman,* 48 Wash. 678, 94 Pac. 641; *Foote v. Robbins,* 50 Wash. 277, 97 Pac. 103; *Broderius v. Anderson,* 54 Wash. 591, 103 Pac. 837.

While the evidence seems plain that the respondents were in fact equitably joint owners with Carstens, it is not entirely clear that, at the time of their agreement with the respondents, the appellants knew of that fact, though the evidence points that way. We find it unnecessary, however, to decide just what effect a lack of such notice would have upon the agreement, since in any event it was incumbent upon the appellants to prove, by a preponderance of the evidence, a contract extending over the time when the exchange was made, exclusive in its character and entitling them to a commission upon sales to purchasers not procured by themselves and on sales of which they were not the efficient cause. We think the evidence wholly fails to establish these things. In our summary we have touched upon every material fact adduced. On all of these points, save one, the evidence as to what the agreement was presents a direct conflict. There was no evidence that the appellants' agency was exclusive. While the testimony of the appellants that the agreement was not limited to six months was to a slight degree corroborated by the circulars designating them as resident agents, that circumstance had no tendency to establish an exclusive agency in the face of the admission that nothing was said on that point. And again, while the appellants testified to the effect that they were to earn their commissions merely by showing the land to purchasers by whomsoever found, they were directly contradicted in this by the respondents, who, so far as we can know from the printed record, were as much entitled to credit as were the appellants. There was no claim that the appellants produced Murphy as a prospective pur-

chaser or person willing to make the exchange. There was
no evidence that they were the procuring cause of the ex-
change. These things .were clearly attributable to West &
Wheeler. In the absence of proof of an exclusive agency,
proof that Murphy was produced by them, or that the ex-
change was the result of their efforts, was indispensable to
a recovery on their part.

Even assuming that the respondents were merely agents
for Carstens, and that the agreement sued on was still in
force when the exchange.was made, the plaintiffs signally
failed in their proof as to these other elements essential to
their case.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.