JOHN T. HARROP et al.

*v.*

LOUIS E. COLE et al.

[Decided October 3d, 1914.]

1. An agent, employed to negotiate for his principal the purchase of land, who violated the principal's confidence, and purchased the land with his own money, and took a deed thereof to himself, became a constructive trustee for the principal's benefit, upon payment of the price.

2. In such case, the principal might establish a constructive trust, by showing a verbal agency contract, or a written contract, or no contract at all, since the trust arises from the agent's representative status and the confidence necessarily reposed in him by the principal.

3. An answer, which does not expressly set up the statute of frauds, but denies that defendant made the contract alleged in the bill, is a sufficient pleading to give the defendant the benefit of the statute as a defence, since the denial puts the complainant to the proof of a legal contract, or of a contract by legal instruments of evidence.

On final hearing on bill, answer and proofs taken in open court.

*Mr. William W. Watson,* for the complainants.

*Mr. Cornelius Doremus,* for the defendants.

STEVENSON, V. C.

As to the facts, the weight of evidence and the probabilities are on the side of the complainants. The defendant's story rests upon his uncorroborated testimony, and in many respects his story and his manner of narrating it upon the stand discredit his cause.

I find that the complainants verbally employed the defendant to negotiate on their behalf the purchase of a parcel of land in Passaic county. The defendant thus charged with this business, in which he had the confidence of his employers, violated his

duty, purchased the land with his own money and took a deed thereof to himself.

With the view of the evidence which I entertain, the case resolves itself into a well-defined question of law about which there has been a remarkable diversity of opinion expressed in decisions of the courts and in the text-books.

Mr. Perry seems to accept as established law that

"parol proof cannot be received to establish a resulting trust in lands purchased by an agent, and paid for by his own funds, no money of the principal being used for the payment." *1 Perry Trusts* § *135.*

Mr. Browne, in his authoritative work on the statute of frauds, appears to favor the contrary view. *Browne Fraud.* § *96.*

In volume 15 of the *Am. & Eng. Encycl. L. (2d ed.)* (at *p. 1187*), cases on both sides of this question are cited, and it is stated that "it seems to be held by the weight of authority that a court of equity cannot grant relief" by holding the agent "a constructive trustee."

We have the supreme court of the United States and the English courts, and the courts of several of the states, firmly supporting the rule that the derelict agent can be decreed in equity to hold in trust for his betrayed and defrauded principal. Other courts of various states of high authority have held otherwise.

It is important to note that the whole basis of objection to the granting of relief to the deceived principal rests upon the statute of frauds. The argument, as stated by Mr. Perry, is that

"the relation of principal and agent depends upon the agreement existing between them, and the trust in such a case must arise from the agreement and not from the transaction, and where a trust arises from an agreement, it is within the statute of frauds and must be in writing."

I think that this view is entirely erroneous and the trend of the decisions is toward its rejection. A trust which is more correctly classifiable as a constructive trust (*1 Pom. Eq.* § *155; 1 Perry Trusts* § *166*) than as a resulting trust (*1 Perry Trusts* § *135*), is established by proof of the betrayal of confidence, of the violation of duties arising out of a fiduciary relation. The

fiduciary relation may be established in a large number of ways. It is a mere accident that in this particular case, and in large numbers of others, the fiduciary relation grows out of a verbal promise. As the authorities abundantly show, equity will not tolerate the betrayal of confidence and it makes no difference how this confidence has been obtained.

When one man assumes to act as agent for another, as the representative of another, he necessarily establishes a fiduciary relation between himself and the other person who stands as his principal. This is in the very nature of the transaction because the agent undertakes to act not for his own benefit but for the benefit of his principal, and his principal stays out of his own business and confides in the agent to attend to this business for him. It is the assumption by the agent of his representative status and the confidence necessarily reposed in him by the principal which create the agent's peculiar liabilities and cast special limitations and obligations upon him. The agency may be established by a written contract or a verbal contract, or no contract whatever, the assumption and confidence involving a purely gratuitous service for which the agent is to receive no compensation in any form.

In a large class of cases analogous to the one in hand, equity intervenes where a fiduciary relation is found to exist between contracting parties, and sets aside or modifies the most solemn written contracts, and for that purpose admits parol evidence. *2 Pom. Eq.* § *956; 1 Perry Trusts* § *210.*

In the case of *Lillis* v. *P. Ballantine & Sons,* decided by me about three years ago, but not reported, I held that "an obligation and a disqualifying fiduciary relation may be created contemporaneously, and the latter may infect the former precisely as if the fiduciary relation had antedated the legal obligation," citing the remarks of Mr. Justice Pitney in his opinion for the court of errors and appeals in *Lynde* v. *Lynde, 64 N. J. Eq.* 756.

It is not worth while, however, in my opinion, for the purposes of this case to spend much time in the examination of the reasoning of judges and text-writers in regard to this much controverted question, because I think the question is settled in

New Jersey by the decision of the court of errors and appeals in the case of *Rogers* v. *Genung (1909), 76 N. J. Eq. 306.* In this case the court of errors and appeals reviewed the decree advised by Vice-Chancellor Stevens, whose opinion is published in *75 N. J. Eq. 13.* The vice-chancellor held in that case that the alleged agent, Genung, who the complainant claimed had undertaken by an oral contract to buy the land in question for him, was already the agent of the owner of the farm and bound as such to get the highest possible price, and was therefore incapacitated to become the agent of or to enter into any confidential relation with a possible purchaser to whose attention he brought the farm, and to whom he offered it for sale. The court of errors and appeals took a different view of the facts, and, notwithstanding that Genung was a real estate agent on whose books the farm in question was listed, and who "offered" it to the complainant for sale, they found that there was nothing in the case upon which to base such an agency on the part of Genung for the owner, Conkling.

As to the law laid down, Vice-Chancellor Stevens, recognizing the conflict of authorities, doubted whether he would be "justified in following the more recent English rule, even if it were considered to be the better," in view of the decisions of this court in *Wallace* v. *Brown (Chancellor Williamson, 1855), 10 N. J. Eq. 308,* and several more recent cases which he cites.

·The court of errors and appeals, however, not being bound by prior decisions of the court of chancery, and having found that Genung, the purchaser, was not disqualified from being employed as agent by the complainant, in unmistakable terms adopted the modern English rule overruling without citing all prior conflicting cases and established a constructive trust in favor of the complainant.

There is a question as to the sufficiency of the defendant's answer to invoke on his behalf the defence of the statute of frauds, and, as we have seen, it is that statute alone which sustains the particular defence we have in view.

It is well settled that if an answer, which does not expressly set up the statute of frauds, denies that the defendant made the contract alleged in the bill, it is a sufficient pleading to give

the defendant the benefit of the statute as a defence. The denial of the contract puts the complainant to the proof of a legal contract or of a contract by legal instruments of evidence. The New Jersey cases on this subject may be found cited in *Lozier v. Hill, 68 N. J. Eq.* (on *p. 305*).

This well-settled rule of pleading is sometimes difficult of application, and the present case illustrates the difficulty. The answer of the defendant Cole denies the making of the contract alleged in the complainants' bill, but then manifestly assuming that an oral contract was made, goes on to set forth the defendant's interpretation of that oral contract or the defendant's understanding of its terms. The bill sets forth a contract whereby the complainants employed the defendant Cole as their agent to buy the land; the answer denies that any contract was made under which the defendant was employed to buy the land for complainants, but alleges that there was a contract made by the terms of which he was employed to endeavor to procure an option on the land for the benefit of the complainants, which option afterwards the owner refused to grant. No reference whatever is made in the answer to the statute of frauds. Under these pleadings the parties were sworn and testified as to what this oral contract was.

After parties have joined issue on their pleadings as to what oral contract they entered into, and each has endeavored in a protracted trial by the production of witnesses, to support his view as to the terms of the contract, I have a very grave doubt whether it is permissible to the defendant, acting upon a suggestion from opposing counsel or from the court, to say at the end of his argument, or by a supplemental brief: "Well, it does not make any difference what this contract was. I have denied the existence of the contract set forth in the bill of complaint, and I now invoke the statute of frauds as a complete defence even if the court is satisfied as the result of the trial that the complainant's account of the verbal contract is true and mine untrue."

It is unnecessary for me to decide this question of pleading, and possibly an examination of the authorities would show that

it is not an open question in this state. The decision will rest upon the view of the law of the case above indicated.

A decree will be advised establishing a constructive trust on behalf of the complainants, and directing the defendants to execute the trust by conveying the land to the defendant upon payment of the price. The rights of the defendant who has purchased a portion of the land will be considered and protected to the extent necessary, and any unconsidered matters will be determined upon settlement of the decree.