HELLENTHAL v. SLOANE.

(First Division.   Juneau.   September 25, 1915.)

No. 1353–A.

1. TRUSTS ⚖101—FRAUD—PRINCIPAL AND AGENT.

   A Mrs. Whipple owned and wished to sell a town lot, and appointed one Thane her attorney in fact to bargain, sell, and convey the premises. Thane orally requested one Shepard to find a purchaser for the property at a price not less than $2,000. The plaintiff negotiated with Shepard and agreed to buy at that price. Shepard advised defendant of the facts, and he went to Thane, and bought and paid for the lot, and took a deed to the property in his own name. Plaintiff thereupon paid the $2,000 to Shepard, and then brought this suit, praying that Sloane be adjudged trustee for. him, and be compelled to convey the property to plaintiff on payment by plaintiff to Sloane of the said $2,000. On demurrer to the complaint, *held*, the property was not impressed with any trust while the title remained in Mrs. Whipple, for want of authority in Shepard, and because it is not alleged that plaintiff paid the consideration before conveyance to defendant.

2. TRUSTS ⚖101—BROKERS—PRINCIPAL AND AGENT.

   Where a person, desiring to purchase a piece of land, employs by parol another to negotiate for the purchase of the land for him, and that other commences such negotiations, but finally, and in violation of his duties as agent, purchases the property for himself, with his own money, and takes the title thereto in his own name, such agent will be held to be a trustee by operation of law.

The amended complaint makes the following allegations:

(1) That on July 30, 1915, and for some months previous thereto Mrs. Whipple was the owner of lot 5, block 28, of the city of Juneau.

(2) That prior to July 30, 1915, she had appointed B. L. Thane as her attorney in fact to bargain, sell, and convey said premises.

(3) That Thane orally appointed Royal M. Shepard as agent "for said Thane and said Whipple to find a purchaser and to sell" said premises for a sum not less than $2,000; that on the 24th day of July, 1915, said Shepard "agreed to sell and sold" said premises for $2,000 to the plaintiff, and that plaintiff

"thereafter" (time not stated) paid said sum to said Shepard for the benefit of the owner of the premises.

(4) That said Shepard, at plaintiff's request, undertook to inform Thane of the sale and to obtain a deed from him for Hellenthal, but instead of so doing informed defendant of the sale, and that he, the said Shepard, would at his earliest opportunity notify said Thane of that fact and obtain for plaintiff a deed as aforesaid; that thereupon, and as soon as defendant had been so informed, the latter offered to act for and on behalf of said Shepard and this plaintiff in so notifying said Thane and in procuring from said Thane as such agent and attorney of said Laura Whipple, the said deed for plaintiff, and that said Shepard immediately accepted the said services of defendant so offered, and then and there and at the request of defendant, on the 26th day of July, 1915, constituted and appointed defendant his agent and representative and the agent and representative of plaintiff, for the purpose of notifying said Thane of the said sale of said premises, and for the purpose of obtaining from said Thane, as such agent and attorney, a deed to plaintiff therefor.

(5) That defendant perfidiously and in utter disregard of the duties and obligations under said trust, and in violation of his said agreement, wrongfully and for the purpose of defrauding plaintiff, said Thane, as such attorney and agent, and said Shepard, immediately called upon said Thane and withheld and concealed from the latter any and all information about said sale of said premises, and willfully and fraudulently, for the purposes aforesaid, failed and neglected to disclose the fact that said premises had been sold to plaintiff, and willfully and fraudulently failed and neglected to request of said Thane, as such agent and attorney, a deed for said premises to plaintiff; but, on the contrary, perfidiously and fraudulently, and in violation of his said trust and the terms of his said contract, caused and induced the said Thane, as such agent and attorney, to execute a deed of conveyance of said premises to him, the said defendant, and thereby in that manner defendant cheated, wronged, and defrauded both said Thane, said Laura Whipple, and this plaintiff out of the premises.

(6) That at the time the said deed was so executed it was the intention of said Thane, as such agent and attorney, to execute a deed of conveyance for said premises aforesaid to whomsoever first accepted the offer of sale of said premises for a con-

sideration of at least $2,000, and defendant, at the time of the execution of said deed and at the time of his acceptance of the said trust from said Shepard and this plaintiff aforesaid, well knew that such was the intention of said Thane, and that, if the said Thane had known that plaintiff had purchased or agreed to purchase the said premises as aforesaid, the said Thane, as such agent and attorney, would have executed said deed to plaintiff, and would have refused to execute it to defendant, and defendant solicited said trust and accepted the terms thereof for the purpose of preventing the said Thane from acquiring a knowledge of the facts of the sale of said premises as aforesaid, and for the purpose and with the intent thereby, and in that manner, to mislead, cheat, wrong, and defraud plaintiff, said Shepard, said Thane, and said Laura Whipple, as aforesaid, and deprive plaintiff of said premises, and for the purpose of defeating the intent of said Thane, as such agent and attorney, to convey said premises to plaintiff as aforesaid; that at the time said defendant so offered to notify said Thane of said sale and to procure a deed from said Thane to plaintiff as aforesaid, said defendant and said Shepard had been friends and on intimate terms with each other for many years, and said Shepard trusted and believed defendant and wholly relied upon him to faithfully discharge his said trust, as defendant then and there well knew; and that in the absence of such faith and confidence in the integrity of defendant as aforesaid said Shepard would not have intrusted said defendant with the duty of so notifying said Thane and of procuring from him said deed, as defendant also at all the times herein mentioned well knew.

The prayer is that defendant be adjudged trustee for plaintiff and ordered to convey to him on the payment of $2,000.

To this amended complaint a demurrer has been interposed on the ground that said complaint does not state facts sufficient to constitute a cause of action.

John Rustgard, of Juneau, for plaintiff.
Shackleford & Bayless, of Juneau, for defendant.


JENNINGS, District Judge. It is obvious that there is no allegation from which it can be gathered that the property was impressed with any trust while the legal title remained in Mrs. Whipple, for the following reasons:

(a) It does not appear that Mrs. Whipple constituted Shepard as her "agent to sell." The allegation is that Thane appointed Shepard as Mrs. Whipple's "agent to sell," a thing which Thane could not do unless he had authority; no such authority is alleged and it cannot be presumed. In the absence of such authority the utmost power Thane could confer upon Shepard was authority to find a purchaser.

(b) Even if Shepard had direct authority from Mrs. Whipple, yet as there is no allegation that Hellenthal paid the $2,000 before Mrs. Whipple deeded to Sloane, no resulting trust had arisen in his favor. The allegation is that Hellenthal "thereafter" paid the $2,000. If he had paid it in after Sloane got the deed, he could be said to have "thereafter" paid; but in such event it would be idle to say that therefore a trust arose in his favor.

Of course, if Shepard was the duly authorized agent of Mrs. Whipple to sell the property and receive the purchase money, and if he did sell to Hellenthal, and the latter paid the purchase money to Shepard for Mrs. Whipple, and this happened before the title was conveyed to Sloane, then, of course, Hellenthal was the equitable owner, and, if Sloane knew of these facts at the time he acquired the legal title, he would be decreed to hold the legal title as a trustee for Hellenthal; but no such facts are alleged.

The case is not one in which a person having knowledge of an equitable title acquires the legal title; for, when Sloane acquired the legal title, Mrs. Whipple was both the legal and equitable owner, and Hellenthal was no owner at all. Let us see if plaintiff is entitled to the relief he seeks on the theory of a constructive trust, a trust ex maleficio; that is, that some action, some fraudulent action, on the part of Sloane towards Hellenthal, makes it against equity and good conscience that Sloane should retain the legal title.

In speaking of trusts ex maleficio, Pomeroy, in his work on Equity Jurisprudence, says, in section 1053:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or other undue influence, duress, taking advantage of one's weaknesses or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property

thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein. * * * The principle is applied wherever it is necessary for the obtaining of complete justice."

### And in section 1056:

"The foregoing cases should be carefully distinguished from those in which there is a mere verbal promise to purchase and convey land. In order that the doctrine of trusts ex maleficio with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal; otherwise, the statute of frauds would be virtually abrogated. There must be an element of positive fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute; it endeavors to prevent and punish fraud by taking from the wrongdoer the fruits of his deceit, and it accomplishes this object by its beneficial and far-reaching doctrine of constructive trusts."

### In section 206, 1 Perry on Trusts, page 263, 4th Edition, the author says:

"The relation of principal and agent is a fiduciary one, and the same observations apply as to other relations of trust and confidence. * * * And so if he is employed to purchase for another, and he purchases for himself, he will be held to be a trustee. No person whose duty to another is inconsistent with his taking an absolute title to himself will be permitted to purchase for himself. For no one can hold a benefit acquired by fraud or a breach of his duty. * * * Or if he accepts any benefits in conducting the business of his principal, he will hold them in trust for him, or if he makes use of his position in any way to obtain a title to himself. If in matters within the purposes of his agency he takes a conveyance in his own name, he is a trustee ex maleficio. * * * So if he buys for himself and his partner the land which he was engaged to buy for the plaintiff, and has the deed made to his partner and pays the money from his own funds, still a trust will result, and the payment will be considered only as a loan, on security of the title. But where one breaks a mere parol agreement to buy land for another and buys it himself, there is no trust, but only a breach of parol contract. The test is whether the act is inconsistent with duties resulting from a relation of confidence between the parties."

### And section 209, Id.:

"These rules apply to every kind of fiduciary relation. The principle is the same in all of them."

And in section 210, Id.:

"But equity goes even further than this. It not only watches over these defined relations of parties, but it scrutinizes the undefined relations of friendly habits of intercourse, personal reliance, and confidential advice. It is well known that habits of kindness, confidence, and trust grow between neighbors and friends; and if advantage is taken of such relations to obtain an unfair bargain, equity will set it aside or convert the offending party into a trustee. Of course, no rules can be laid down by which to judge all such cases; for every case must of necessity depend upon its own facts."

The principle laid down in some of the cases seems to be irreconcilable with the principle laid down in the other cases on this proposition; but I think it will be found that the weight of authority is in accord with the case of Rose v. Hayden, 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145. The opinion there is by a very distinguished judge, and the case holds that where a person, desiring to purchase a piece of land, employs by parol another to negotiate for the purchase of the land for him and that other commences such negotiations, but finally and in violation of his duties as agent purchases the property for himself, with his own money, and takes the title thereto in his own name, such agent will be held to be a trustee by operation of law; and this notwithstanding the statute of frauds to the fact that the employment of the agent was only in parol, and the further fact that the principal did not advance the purchase money and has never been in the possession of the property, nor made any improvements thereon, and that the authority of the agent for the purpose for which he was employed was not in writing. The court concluded as follows:

"The controlling question in this case is not whether the principal advanced the purchase money or not, but it is whether, in equity and good conscience the agent, who in fact purchased the property with his own money and in his own name, in violation of his agreement with his principal and in abuse of the confidence imposed in him by his principal, can be allowed to retain the fruits of his perfidy. The weight of authority is, we think, that he cannot [citing several cases]. * * * The facts that the defendant was the agent of the plaintiff for the purpose of negotiating for the purchase of the property, that in violation of his agency he purchased the property for himself and took the title thereto in his own name, and the further fact that the plaintiff has elected to treat the defendant as a trustee holding the property for the plaintiff, and has tendered to the defendant the full amount which the defendant paid for the property, are, we think, sufficient to entitle the plaintiff to recover."

This case was cited with approval as late as June 1, 1914, by the Supreme Court of Colorado in the case of McPherrin v. Fair, 57 Colo. 333, 141 Pac. 472. The facts in this latter case are similar in many respects to the case at bar, although not entirely identical.

It would seem, then, that on the trial of this case the crucial point would be this: Was there any fiduciary relation between Sloane and Hellenthal? Was Sloane Hellenthal's agent to get a deed from Thane, the attorney in fact of Mrs. Whipple? If he was, then a relation of trust and confidence existed between them, which Sloane was not at liberty to abuse; if there was not any such relation, then Sloane owed no duty to Hellenthal, and no legal opprobrium could justly attach to what would then be simply an exercise of superior diligence. In considering this demurrer, therefore, the question is: Does it appear from the complaint that Sloane was Hellenthal's agent for the purpose aforesaid?

It is alleged that "Shepard, at plaintiff's request, undertook to inform Thane of the agreement to purchase and to obtain a deed from him for Hellenthal." Before this allegation, there had been no averment of any kind that Shepard was Hellenthal's agent for any purpose. The allegation that Thane had appointed him (Shepard) as agent to find a purchaser and to sell, we have seen, was, at the utmost, only an appointment to find a purchaser; but this allegation, to wit, that "said Shepard, at plaintiff's request, undertook to inform Thane of the agreement to purchase and to obtain a deed from him for Hellenthal," would seem to be a constituting of Shepard as Hellenthal's agent. If Shepard, being such agent, instead of getting a deed for Hellenthal, had taken title in his own name, I think it would be clear that under the authorities cited Hellenthal could have held Shepard as trustee. Now it is alleged that Shepard, instead of himself informing Thane and getting a deed for Hellenthal, informed Sloane of the purchase by Hellenthal, and also informed him "that he (Shepard) was going to get a deed from Thane for Hellenthal at the earliest possible opportunity." What happened, then, according to the complaint? Sloane offered to act on behalf of Shepard and this plaintiff and to get the deed for the plaintiff. Shepard accepted the offer, and it is alleged thereupon "constituted and appointed defendant the agent and representative of plaintiff to obtain from Thane a deed to plaintiff." How Shepard

could thus shift his agency to Sloane without having been authorized so to do by Hellenthal is not apparent; but, as Hellenthal brings this suit, an inference should probably be made that, if Shepard did shift his agency to Sloane, Hellenthal has ratified his action in so doing.

However this may be, certainly it should appear that Sloane knew that Shepard was Hellenthal's agent to procure from him a deed from Thane, and that the fraudulent representations of Sloane were made to Hellenthal (either directly or by virtue of having been made to Shepard, Hellenthal's agent), and not to Shepard in his individual capacity. It may be that a liberal construction of the complaint will reveal the fact that these allegations do in substance and by inference appear; but the complaint is not direct and certain on those points. It is nowhere categorically alleged that Sloane was Hellenthal's agent, except by a statement that Shepard constituted him as such. In cases of this kind the relief sought can only be granted when the evidence is clear, precise, satisfactory—it might be said, compelling. No mere preponderance pointing to a trust will be sufficient, and it is not too much to require that the allegation of facts upon which the right to the relief is predicated should be positive and full. As this is an appeal to the conscience of the court, nothing should be left hazy, either in allegation or in proof, as to the relations of the parties to each other, for it is upon those relations only that fraud can be successfully predicated.

Those relations, if any there were, should be more clearly and fully set forth, so that the court can see whether the facts alleged do certainly state that there has been fraud practiced—fraud as distinguished from the mere breaking of a promise. The words "perfidiously" and "fraudulently" are mere adjectives. The allegation of an intent to cheat and defraud Mrs. Whipple and Thane and Shepard add nothing. How could Mrs. Whipple be defrauded? She wanted to sell the land for $2,000. She sold it, and presumably got her money. How could Thane be defrauded? He was a mere agent to sell. He effected the sale, and the money was paid through him. How could Shepard be defrauded by any act of Sloane? His business was simply to find a purchaser. He found one and is entitled to his commission. None of those persons is complaining of any fraud. They are not parties to the suit. No

5 A.R.—24

fraud is available to the plaintiff, except a fraud upon him, and that fraud is not alleged with the particularity which is required when an appeal is made for relief solely upon the ground of fraud.

I think that the allegations in this complaint should go more fully into detail. I think the complaint should show specifically and categorically, not by inferences or strained constructions:

(1) The relations existing between Sloane and Hellenthal; what their extent was, and how they were created.

(2) What Hellenthal was deprived of; how he was cheated and defrauded; and it should show this by statements of fact, and not by mere general assertions. As it now is, it contains no allegation that Shepard, relying upon Sloane, did not inform Thane; no allegation that Hellenthal has done anything to his injury, or refrained from doing anything to his advantage, led thereto by reliance upon either Shepard or Sloane; no allegation that Thane did not know of the sale or purported sale to Hellenthal. In one place it is alleged that Thane would have conveyed to the first comer; in another, that Thane was bent on conveying to Hellenthal. A great deal is said in the subjunctive mood; tremendous "ifs" abound throughout the sixth paragraph, without positive declarations of facts which make those "ifs" pertinent.

The allegations are not clear, positive, full enough to challenge the attention of a court of equity. With so much alleged by way of innuendo and vituperation, it would be sad if a proper complaint could not be framed.

In the interest of good pleading, if for no other reason, the demurrer will be sustained.