H. H. HALSELL v. WISE COUNTY COAL COMPANY.

Decided November 26, 1898.

**Trust—Parol Evidence.**

Where the president of a corporation is directed as its agent to purchase land for it, and he purchases the land for himself and takes the deed in his own name, he holds it in trust for the company, and the trust relation may be shown by parol evidence.

APPEAL from Wise. Tried below before Hon. J. M. PATTERSON.

*T. J. McMurray,* for appellant.

*T. E. Carswell,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by the Wise County Coal Company, a Texas corporation, on the 10th day of April, 1896, against H. H. Halsell, in the District Court of Wise County, to recover 143 3-10 acres of land, a part of the Rebecca Coleman survey lying in Wise County, Texas, or all the interest of the defendant Halsell therein remaining unsold by him.

It was alleged that Halsell, while the president of the company, in February, 1893, was appointed by a vote of the directors to purchase the land in controversy for the company, as its agent, and cause the title thereof to be vested in the plaintiff, and the defendant agreed to do so, the plaintiff to pay the purchase money; that in pursuance of said arrangement he did, on the 18th day of February, 1893, purchase the land for the sum of $1239, but caused the conveyance to be made to himself, claiming absolute title thereto, and on the 25th day of February, 1893, conveyed an undivided interest of one-half of the north half thereof to another party for the sum of $1239 cash, who had sold it to others, so that the present holders thereof were innocent purchasers of such interest for value, without notice of the rights of plaintiff, and against whom, for this reason, no judgment was asked; that the said sum of $1239 so received by him was used and appropriated by him to his own use; that plaintiff has at all times been ready and willing to comply with its agreement with defendant, and pay him the amount he paid out for said land, and is now willing and ready so to do; that it had demanded of said Halsell a conveyance of the balance of said land, offering to repay him all sums paid out by him, and he refused to convey the same, but repudiated said agreement and refused to account to plaintiff for the $1239 so received by him. Wherefore it is alleged that defendant Halsell holds the land in trust for the plaintiff, and the prayer is that the court so decree, and that it recover the same from him.

The defendant answered by general and special demurrers, general denial, and also specially that, if there ever was an agreement between him and plaintiff that he should purchase said land for plaintiff, the same

was without consideration, illegal, and void, for that there was no written memorandum of same; that if any order of the plaintiff's board of directors was made, directing him to buy the land for plaintiff, upon which to build a town, said order was void, because ultra vires, said corporation having no power or authority to buy or hold land for the purpose of building a town, but only for the purpose of mining and digging coal, etc., and also limitations of three and five years.

The case was tried by the court without a jury, and judgment rendered for the plaintiff, and it comes here on a statement of facts, without any conclusions of fact or law found by the district judge. .

The evidence contained in the record tends to prove substantially the following facts:

On the issue of boundary the evidence is conflicting, but sufficient to sustain a judgment in favor of either party.

It establishes that in February, 1893, the board of directors of the coal company agreed to purchase the land in controversy for the purposes of a town site and railroad station, and for the coal that was known to exist below the surface. Appellant was at that time president of the company, and was present and presided at that meeting. The board of directors at the same meeting selected and appointed him to make the purchase for the company, and he agreed to do so. Nothing was said about what he should pay for the land, or upon what terms it should be bought, or whose money should be used in paying for it, nor was any particular number of acres designated. The land desired had been viewed out, however, a few days before by Halsell and two other directors of the company, and the general boundaries and outlines of the land desired were understood by all parties and known to appellant.

Appellant bought the land on the 18th day of February, 1893, taking the deed to himself individually, paying therefor $477.65 in cash and executing his two notes, each for the sum of $477.65, due February 18, 1894, and February 18, 1895, respectively, and placed his deed upon record in Wise County on the same day. He immediately began exercising acts of ownership over the land. On February 25, 1893, he sold one-fourth interest in it to one Gibson for $1239, whose deed was placed on record in Wise County March 14, 1893. On March 1, 1893, he conveyed a right of way across it to the Chicago, Rock Island & Texas Railway Company for one dollar, which deed was placed on record May 1, 1893. He sold and conveyed an undivided one-fourth interest therein to J. R. Stephens, one of the directors of the coal company, on March 18, 1893, but his deed was not recorded until March 20, 1895.

No complaint was made to him of his action in buying the land for himself, or demand made upon him to convey it to the coal company, until the day this suit was filed against him, and then no money was tendered to him. The evidence is conflicting as to when he fenced the land. He testified that he fenced it "about April 8, 1893," but one of his witnesses testified that he fenced the south half of it in May and June, 1893 and the north half was not fenced until the spring of 1894.

The coal company was solvent all the time, being worth about $40,000 and owing no debts. Its assets consisted principally in coal lands in Wise County, but it had no money at the time it directed appellant to buy the land for it. There is evidence tending to establish that it was understood between the parties that the stockholders would each pay his pro rata part of whatever the land cost, when the amount or price was ascertained. Some of the directors of the coal company knew in March, 1893, that appellant had bought the land for himself, and was claiming it as his individual property.

The land was patented to the heirs of Rebecca Coleman on March 16, 1858. Halsell claimed under a regular chain of transfers to the certificate, beginning with a transfer of April 13, 1853, from Rebecca Coleman's administrator to Cleveland.

The only questions which we consider serious enough to discuss are (1) whether the evidence establishes a trust whereby Halsell held the land only as trustee for the coal company; and (2) whether, if it does establish such trust, the claim of the coal company is barred by limitation of three years.

The trust in this case is established by the evidence of C. D. Cates, a stockholder and one of the directors in the coal company in February, 1893, who was present at the called meeting of the directors when they agreed to buy the land and appointed appellant, who was then president of the coal company, to make the purchase for the company, and who testified that appellant agreed to do so. No minutes of the meeting were produced showing such action, but it was shown that it was a called meeting—five of the nine directors being present—and no minutes were kept. The evidence of Cates is that "some one just suggested that Halsell buy the land, and we all agreed to it."

H. Greathouse, one of the directors, testified that he was present at the meeting called by the company for the purpose of talking about buying the land; that appellant was present; that J. R. Stephens made a motion that defendant Halsell buy the land for the company; that he did not think the motion was written; that each member agreed to furnish his pro rata part.

W. T. Simmons, a stepson-in-law of appellant, testified that he lived with appellant in February, 1893, and told him he thought of buying the land; that appellant "said he would rather I would not buy it; that the coal company had appointed him to buy it, and that if I bought it, it would not look right, I being in the family; so I did not buy it. I had been in partnership with the agent of the land, and told Halsell how to buy it." He admitted that he had said nothing about this conversation until after he and appellant had a falling out; that he was not, at the time of testifying, on friendly terms with appellant; that he had instigated this suit against appellant, he having become a stockholder in the coal company.

The appellant denies all the material statements of these witnesses.

The evidence of appellee company, if true, is sufficient to establish

the relation of principal and agent. The question of veracity was one for the court below to decide, and not for us. The company, as principal, had directed its president, as its agent, to purchase the land for it, and he agreed to do so. This relation, without doubt, may be established by parol evidence, and although the agent's subsequent wrongful act in purchasing the land for himself, and taking the deed in his own name, rendered him a trustee for the company, and this action is one to establish a trust in the land so conveyed to him, yet such a trust relation may be established by a preponderance of the evidence, like any other fact; and where the evidence is conflicting, the jury, or the trial court, in the absence of a jury, has the right to weigh it and determine the credibility of the witnesses, and make the findings according to the very truth of the matter, and when this is done we have no right to set aside such a finding and substitute ours in the place thereof, even if we were so inclined.

Considering Halsell, then, as an agent, which the court's judgment below in legal effect establishes, "it was a fraud on his part 'pure and simple' to take title in his own name for his own use. The act at once turned him into a trustee ex maleficio." Squire's Appeal, 70 Pa. St., 268.

In Dennis v. McCagg, 32 Illinois, 445, the Supreme Court of that State said: "The rule is well established that trustees and others sustaining a fiduciary and confidential relation can not deal on their own account with the thing or the persons falling within that trust or relationship. This rule is applied to all persons in whom there is a trust and confidence reposed which would bring in conflict the interest of the trustee and cestui que trust. Davoue v. Fanning, 2 Johns. Ch., 261. The temptation of self-interest is too powerful and insinuating to be trusted; and it must be removed by taking away the right to hold the property purchased. Citing Thorp v. McCullum, 1 Gilm., 626; Switzer v. Skiles, 3 Gilm., 529.

An eminent author on the subject of trusts has written: "No person whose duty to another is inconsistent with his taking an absolute title to himself will be permitted to purchase for himself. For no one can hold a benefit acquired by fraud or a breach of his duty. All the knowledge of the agent belongs to the principal for whom he acts, and if the agent use it for his own benefit, he will become a trustee for his principal. Whenever one person is placed in a relation to another, by the act or consent of that other, or the act of a third person, or of the law, so that he becomes interested for him or with him in any subject of property or business, he will in equity be prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has been associated." 1 Perry on Trusts, 4 ed., sec. 206.

See also Gardner v. Rundell, 70 Texas, 455, where the same rule, in effect, is laid down, and where it is declared that such a contract is not within our statute of frauds. See also Satterthwaite v. Loomis, 81

Texas, 64, where the rule as above quoted from the case of Dennis v. McCagg is adopted, and the case cited and approved.

The issue of limitation of three years rests upon conflicting evidence as to the time adverse possession began. Appellant's own witness, Mahaffey, disputes him as to the time he fenced and took exclusive possession of the land. Appellant swears he fenced it "about April 8, 1893." Mahaffey swears: "It was fenced by defendant in May and June, 1893; that is, the south half, where the park is, was fenced at that time. The north half was fenced in the spring of 1894." This suit was filed April 10, 1896. So, if the three years' statute of limitation applies to an action of this character, and if the trust had been clearly repudiated and notice brought home to the principal, the court below has evidently found, upon conflicting evidence, that the defendant failed to prove adverse possession of the land for the period of time required by law; and this finding we must approve, in support of the judgment.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.