**McALISTER et al. v. ECLIPSE OIL CO.**

No. 2691.

Court of Civil Appeals of Texas. Beaumont.

Feb. 20, 1935.

Rehearing Denied Feb. 27, 1935.

Albert R. Young and Perry & Sidman, all of Houston, for appellants.

Ed. E. Easterling and Thos. J. Baten, both of Beaumont, and Llewellyn & Dougharty, of Liberty, for appellee.

WALKER, Chief Justice.

On the 20th day of July, 1933, G. R. McAlister and H. Mecom each owned an undivided one-eighth interest and H. A. Dismuke an undivided one-sixteenth interest in a strip of land in Liberty county on the eastern side of what is known as the L. Carr 65-acre tract, having a width of approximately 35 feet from east to west and a length of approximately 1,830 feet from north to south. Eclipse Oil Company was operating in the Liberty county oil field near the above-described tract of land, with G. R. McAlister as its general manager and superintendent of drilling and production operations, with a salary for such services paid him by Eclipse Oil Company of $250 per month; he was also furnished an automobile for use in connection with his employer's business, and an expense account. The home office of Eclipse Oil Company is in the city of Beaumont, where the monthly meetings of its board of directors were held on the 20th day of each month. On the 20th day of July, 1933, at a regular board meeting, McAlister suggested to his board of directors that Eclipse Oil Company secure an oil and gas lease upon the above-described tract of land, which, at that time, was very valuable for oil and gas development. At that time he told his board of directors that he owned an interest in the land, individually, and "might be able to procure a lease from the other joint owners"; thereupon the board of directors directed McAlister to procure the lease, on conditions that it be signed by all the joint owners and that no bonus be paid, with the other conditions ordinarily incident to such a lease. A minute of this proceeding was made and duly recorded in the minutes of the board of directors. The August meeting of the board of directors of Eclipse Oil Company was held on the 21st day of that month, all directors being present. McAlister reported to that meeting that he had secured the lease upon the above-described tract of land from all the joint owners except a small interest owned by the Taylor minors, and had contracted for that interest and had arranged for the probate court to approve the lease, and, when that was done, the lease would be ready for delivery. The board of directors accepted

his report in good faith. McAlister made no further report to his board of directors about the lease, nor was he asked for a report at the September and October meetings of the board. During that time, as at all prior times, McAlister had the complete confidence of his board of directors, until a few days before the institution of this suit on the 16th day of November, 1933, when it was learned for the first time that he had not taken the lease for the Eclipse Oil Company, but, on or about the 8th day of August, 1933, had taken it in his own name as trustee for H. Mecom. All the joint owners joined in the execution of that lease except the minors, and the lease from them was executed as of date the 21st of August, 1933. All expenses incident to procuring these leases were paid by H. Mecom, and, after their execution, they were delivered to Mecom, and by him filed for record. On the 3d of October, 1933, McAlister, as trustee for Mecom and acting under his instructions, executed to George M. Bell an assignment of an undivided one-half interest in these leases, and a similar lease was executed by him to Bell, covering his one-eighth undivided interest. On the same day Bell assigned back to McAlister one-half of the interest covered by the McAlister individual lease. Subsequently, Bell assigned his interest in the leases to Liberty-Hull Oil Company, and a contract was entered into by the interested parties under which the land was successfully developed for oil. Under this development contract Mecom and McAlister each paid the Liberty-Hull Oil Company $3,000. Under an agreement between McAlister and Mecom, the one-half interest retained by McAlister, as trustee for Mecom, together with his individual interest, reassigned to him by Bell, was divided equally between them, with each to pay one-fourth the development costs.

On the facts stated, Eclipse Oil Company, by its first amended original petition, naming McAlister and Mecom as defendants, sought to create a trust in its favor against the one-half interest in the leases retained and held by McAlister and Mecom. The answers filed by the defendants merely put in controversy the plaintiff's theory of the case, with additional allegations of good faith by Mecom in dealing with McAlister. On trial to the court without a jury, judgment was entered in favor of Eclipse Oil Company against McAlister, creating a trust in favor of plaintiff against his one-fourth interest in the above-described land, less the one thirty-second interest owned by him individually, and in favor of Mecom, sustaining his plea of good-faith dealing with McAlister.

In support of his judgment, the trial court filed conclusions of fact, wherein he found the facts above recited, and further as follows: On the 21st day of July, the day following the meeting of his board of directors, when he agreed to secure the lease for his company, McAlister submitted the offer of the board of directors to Mecom and Dismuke, but they unqualifiedly refused to make the lease. After that refusal, McAlister did not submit the proposition of his board of directors to any of the other joint owners of the land, but at once abandoned all further efforts to secure the lease for his company; and, on or about the 1st day of August, 1933, without the knowledge or consent of his company, contracted to secure the lease for Mecom, which he did in the manner above stated and for the consideration above stated, and that notwithstanding his company believed that his efforts in relation to this lease were for its benefit. We quote the following additional fact conclusions:

"I find that Harvey Mecom, at all times during the period covered by the transactions involved herein, knew that G. R. McAlister was a director of the Eclipse Oil Company and the general manager in charge of said company's drilling and production operations in the Hull field (Liberty County). * * * I further find, however, that the said Harvey Mecom did not know of any official resolution or action of the Board of Directors of the said Eclipse Oil Company authorizing and directing the said McAlister to undertake to procure a lease on the property in controversy."

"I find that the fact of the making of said contracts with Geo. M. Bell and the Liberty-Hull Oil Company and the drilling on said property by Liberty-Hull Oil Company was unknown to the Eclipse Oil Company until a few days before the filing of this suit. In fact said Eclipse Oil Company knew nothing after August 21st, 1933, of any transaction concerning the property and then knew only what had been reported to them by the defendant McAlister on August 21, 1933, as hereinabove found."

"I find that the defendant, G. R. McAlister, never, at any time, promised or agreed in writing to procure for the Eclipse Oil Company a lease on the tract of land in question, and that he never promised and agreed in writing to execute any such lease for the use and benefit of Eclipse Oil Com-

pany covering the undivided one-eighth (⅛) interest which he, the said G. R. McAlister, owned in said tract of land."

### Opinion.

Eclipse Oil Company and McAlister present assignments of error against the judgment of the lower court; it is our conclusion that the judgment should be in all things affirmed.

■ First, as it relates to the judgment in favor of Eclipse Oil Company against McAlister: Not only was McAlister general manager, etc., of Eclipse Oil Company, but he was given a special agency, within the scope of his general employment, to secure a lease on the above-described tract of land for the benefit of his principal. This agency being within the scope of his general employment, compensation for its duties was included in, and a part of, his monthly salary of $250 and the use of the company automobile and the expense account. True, he made an unsuccessful attempt to secure the lease and abandoned all effort to secure it, but he did not report that fact to his principal; at the very time when he held the lease in his own name, as trustee for Mecom, he reported to his board of directors that he had discharged his special agency and had secured the lease as directed by his board of directors. The lease was secured by his efforts on the time of his principal, paid for as a part of his monthly compensation. We do not mean to hold that McAlister was by force of law the agent of his principal in all leasing deals and did not have the power to contract in his own name for his own benefit. But we do hold that, while engaged in the regular discharge of his duties under direction of his principal to secure a lease on this particular property, he could not abandon his agency without notice to his employer, cease his efforts in its behalf, and, on the time and at the expense of his employer, work and contract in his own interest concerning the very property covered by this special agency. In Satterthwaite v. Loomis, 81 Tex. 64, 16 S. W. 616, 618, our Supreme Court quoted the following proposition from Dennis v. McCagg, 32 Ill. 429: "In equity, an agent is disabled from dealing in the matter of his agency on his own account."

Where a company directed its president, as agent, to purchase land for it, and he agreed to, but subsequently purchased the land for himself, taking the deed in his own name, it was held in Halsell v. Wise County Coal Co., 19 Tex. Civ. App. 564, 47 S. W. 1017, that the president held the land as trustee for his company.

McAlister cites as controlling in his interest Green v. Hall, 228 S. W. 183, 185, by the Texas Commission of Appeals. As we understand that case, it is not in point on any proposition advanced by McAlister. In that case C. W. Hall was general manager of a marble company, with authority to employ help and buy machinery, but without authority to borrow money. The marble company held a lease on a marble quarry. Through no fault on Hall's part, the lease was forfeited. The forfeiture was in no respect the result of a breach of any obligation due by Hall to his company. He was under no special contract with his company to secure a new lease for it on the quarry. Summing up Hall's duties, the Commission of Appeals said: "When Hall had exercised ordinary care in an endeavor to develop and establish the quarry contemplated by the contract, and failed through no fault of his own, but only on account of the company's inability to finance it, and the lease was thereby forfeited, his obligation to the company ceased."

Having discharged his obligations to his company, of course, Hall had the right to contract for himself. But in this case McAlister had not discharged his obligations to his company. It was his duty to secure this lease for his company, and, on the facts found by the court, all dealings in relation to this property were for the benefit of his company. The court correctly adjudged that Eclipse Oil Company had the right to step into the shoes of McAlister, assume his obligations, and reap his profits.

■ Second, as to McAlister for the one thirty-second interest against Eclipse Oil Company: The court's conclusion of law in favor of McAlister, as to his one thirty-second interest owned by him individually, must be affirmed. McAlister's agency was to secure the lease from his co-owners; that was the obligation covered by his employment; that was the agency he agreed to perform; that was the agency he breached. While it is true he promised his company to join in the lease for its benefit, that promise was oral. It was his property, and no legal duty to lease it to his company could be predicated, to the least extent, upon his employment. His breach of trust related only to the interest secured by him for Mecom. Holding his individual interest, free of all obligations except his verbal promise to

lease, which was within the statute of frauds (Rev. St. 1925, art. 3995), he conveyed his interest, as he had the legal right to do, to Bell. Since the special agency of McAlister covered only the interest of his co-owners, and that was the agency breached by him, Eclipse Oil Company cannot recover beyond the breach of that agency. His agreement to lease his individual interest was within the statute of frauds and, as between him and his company, absolutely void.

Third, as the judgment relates to Mecom: Though Mecom knew of McAlister's general employment by Eclipse Oil Company and that he had been asked by McAlister to lease his interest to that company, he did not know that, as a part of his general employment, McAlister had specially agreed to secure this lease for his company and that his monthly salary was, in part, compensation for that service. There is a broad distinction between the general authority to lease any property on the discretion of the agent and a special duty by the agent, on a valuable consideration, to lease a particular property. In the first instance the agent is bound to act in the interest of his principal only to the extent of good faith; in the second instance he is absolutely prohibited from dealing with the property for his personal interest. From Mecom's standpoint, he knew that McAlister could not lease this property for Eclipse Oil Company, for the reason that he would not join in the lease; that took Eclipse Oil Company out of all subsequent negotiations as far as Mecom was concerned. From Mecom's standpoint, McAlister had no further duty to perform to his company in relation to this property. Mecom knew, under principles of equity, that McAlister could deal for his own benefit and on his own account and for his own profit in all matters not involving a breach of trust to his employer; that, where there was no conflicting interest, McAlister could act as his agent and hold a lease in trust for him. The court found that Mecom acted in good faith towards Eclipse Oil Company in contracting with McAlister to secure the lease from the other co-owners, and further that he acted in good faith in expending his money in securing these leases and in contracting for the development of the lease. The court found no fact, and Eclipse Oil Company has brought forward no evidence from a rather voluminous statement of facts, convicting Mecom of knowingly inducing McAlister to breach his trust with his employer, but, on the contrary, all conclusions of fact made by the trial court support the conclusion that Mecom dealt with all parties in the utmost good faith. Mecom is protected by the proposition quoted above from Hall v. Green, that is to say, as Mecom understood the facts, McAlister had exercised ordinary care in his capacity of general manager for his company in an endeavor to secure for it the lease and had failed through no fault of his own; and that was all Mecom knew. Therefore, as he understood the facts, McAlister's obligations to his company had ceased. The difference between the rights of Mecom and McAlister rests upon that conclusion; from Mecom's standpoint McAlister's obligations to his company had ceased; but from McAlister's standpoint that obligation had not ceased, and he could not deal with the property on his own account, but all interests acquired were in trust for his company.

The judgment of the lower court is in all things affirmed.