[No. 27115. Department Two. November 2, 1938.]

James Carkonen, *Appellant,* v. J. F. Alberts *et al., Respondents.*[1]

[1]Reported in 83 P. (2d) 899.

*Rummens & Griffin,* for appellant.

*M. M. Pixley,* for respondents.

MILLARD, J.—Plaintiff verbally employed J. F. Alberts, one of the copartners operating as real estate brokers under the firm name Alberts-Gingrich, to negotiate, on behalf of plaintiff, the purchase of certain real property in King county. Alberts purchased that property with his own money and subsequently sold same at a profit. This action was instituted to establish a trust for the plaintiff in the proceeds from the sale of the property. The appeal is from the judgment of dismissal rendered upon plaintiff's refusal to plead further, after a demurrer had been sustained to the complaint on the ground that the alleged agreement, not being in writing, is not enforcible because of the statute of frauds.

The material allegations of the complaint, admitted by the demurrer to be true, are, briefly, as follows:

Alberts, on behalf of his copartnership, orally agreed with appellant to act as the agent of the latter in negotiating for appellant the purchase of certain real

property in King county owned by one Eugina Angel—with whom none of the respondents was acquainted—for a commission to be paid by the appellant to the respondents in such sum as should be reasonable, which commission appellant agreed to pay upon the conclusion of the purchase. The parties orally agreed that Alberts would approach Angel and endeavor to purchase the property from him for appellant at a price of approximately five thousand dollars, or such lesser sum at which the land might be purchased, or at such sum in excess of five thousand dollars as appellant might authorize if that be the best price at which the land could be purchased. Appellant agreed to supply the money with which to pay the purchase price of the land upon the purchase being effected.

Appellant took Alberts to the property, concerning which none of the respondents possessed any knowledge or knew that the same could be purchased, and the two made an investigation of the condition and situation of the land. Alberts entered into negotiations with Angel, to whom he did not disclose his agency for appellant, for the purchase of the property. Pursuant to an oral agreement with Alberts to accept three thousand dollars for the property and pay to Alberts a commission on such sale when effected, Angel conveyed the land to one Joseph Francis, who was in fact appellant's agent, J. F. Alberts. Thereafter, "as a part and parcel of the same transaction," Alberts under the name of "Joseph Francis" conveyed the property to one Koch for a consideration of seven thousand dollars.

If a real estate broker, orally employed as an agent to negotiate for his principal the purchase of land, violates the principal's confidence and purchases the land with his own money and thereafter sells the land at a profit, may a trust be established for the

principal's benefit in the proceeds received by such agent from his sale of the land? That is the only question presented by this appeal.

In *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482, we reviewed our cases on the subject of trusts and restated the fundamental characteristics of the several varieties of trusts: Express trusts, which are created by contract of the parties and intentionally; implied or resulting and constructive trusts, which are created by operation of law, where the acts of the parties have no intentional reference to the existence of any trust.

The trust which appellant seeks to establish must be an express trust, a resulting trust, or a constructive trust. An express trust in real estate cannot be established by parol evidence. *Zioncheck v. Nadeau, ante* p. 33, 81 P. (2d) 811. A resulting trust is a trust raised by implication of law and presumed to exist from the supposed intention of the parties and the nature of the transaction. If appellant had paid the consideration for the purchase and the title had been taken in the name of another, a presumptive or resulting trust would have been raised by implication or construction of law. That situation, however, is not presented by the admitted facts before us. If, pursuant to an oral agreement, respondents purchased the land for appellant with funds supplied by appellant, or if, pursuant to an oral agreement, respondents advanced the purchase price as a loan to appellant to secure the payment of which respondents took legal title to the property in their name, in either case such purchase would give rise to a resulting trust.

The authorities are uniform, however, that it is necessary, in the creation of a resulting trust, that the principal must have paid over his money at or before the execution of the conveyance from the vendor to the agent, or that the principal incur, at that time, an ab-

solute obligation to pay as part of the original consideration of the purchase. The trust can not be created by an advance of the purchase money after the purchase has been made by the other with his own funds or on his own credit. A resulting trust must grow out of the facts existing at the time of the conveyance and can not arise from a mere parol agreement that the purchase should be for the benefit of another. *Hunt v. Friedman,* 63 Cal. 510; *Milner v. Stanford,* 102 Ala. 277, 14 So. 644.

Constructive trusts, which are also known as trusts *ex maleficio* or *ex delicto,* are those which arise purely by construction of equity and are entirely independent of any actual or presumed intention of the parties. Resulting and constructive trusts are clearly distinguishable. In the case of the former, there is always the element, although it is an implied one, of an intention to create a trust, by reason of which, although it is by no means an express trust, it approaches more nearly thereto. In the definition of resulting and constructive trusts in 39 Cyc. 26 *et seq.,* is the following language respecting constructive trusts:

"Constructive trusts on the other hand have none of the elements of an express trust, but arise entirely by operation of law without reference to any actual or supposed intention of creating a trust, and often directly contrary to such intention. They are entirely *in invitum,* and are forced upon the conscience of the trustee for the purpose of working out right and justice or frustrating fraud."

Counsel for appellant contend that a trust *ex maleficio* arose by reason of the secret purchase and sale of the land by respondents while agents of appellant, as that constituted a violation of the relationship of trust and confidence created by the oral agreement between appellant and respondents. It is argued that respondents were not employed by appellant to pur-

chase the land and give appellant the benefit of the purchase by conveying the land to appellant at the price at which the property was acquired, but that respondents were employed

". . . merely to act as agents for the appellant with Angel, the owner, to the end that appellant should become the purchaser direct from the owner, Angel."

It is unlawful for any person to engage in the business or act in the capacity of a real estate broker within this state without first obtaining a license therefor. Rem. Rev. Stat., § 8340-5 [P. C. § 5724-5].

The statute (Laws of 1925, Ex. Ses., chapter 129, p. 219, § 4, Rem. Rev. Stat., § 8340-4 [P. C. § 5724-4]) defines a real estate broker as follows:

"Within the meaning of this act, a real estate broker is a person, who, for a compensation or promise thereof, performs one or more acts of selling or offering for sale, buying or offering to buy, negotiating or offering to negotiate, either directly or indirectly, whether as an employee of another or otherwise, the purchase, sale, exchange, lease or rental of real estate or interest therein for another person. The word 'person' as used in this act, shall be construed to mean and include a corporation, copartnership or unincorporated association. The provisions of this act shall not apply to any person who purchases property for his own use or account, nor to any person who, being the owner of property, sells, exchanges, leases, rents or otherwise disposes of the same for his own account, nor to any person holding a duly executed power of attorney from the owner granting power to consummate the sale, exchange, or leasing of real estate, nor to the services rendered by an attorney at law in the performance of his duties as such attorney at law, nor to any receiver, trustee in bankruptcy, executor, administrator or guardian, nor to any person acting under the order of any court, nor any person selling under a deed of trust."

That is, excluding persons performing a specified

type of service, *a person* who, *for* a *compensation* or promise of compensation, performs one or more acts of buying or offering to buy, *negotiating* or offering to negotiate, *as an employee* of another *or otherwise,* the *purchase* of real estate is a real estate broker. The restrictions and limitations upon the powers of the respondents—merely to act as agents for appellant in negotiating the purchase—do not, in view of the statute quoted, change the role or status of respondents as real estate brokers. We held in *Grammer v. Skagit Valley Lumber Co.,* 162 Wash. 677, 299 Pac. 376, that an expert lumberman employed to obtain a buyer was, within the statutory definition, a real estate broker; that, although he was not permitted, among other things, under his agreement to make or submit an offer—his powers as much or more restricted and limited than respondents—nevertheless, he was a broker with limited authority, as he was authorized to obtain a buyer and to negotiate and obtain offers.

█ Is appellant's oral agreement employing respondents as agents or brokers to negotiate on appellant's behalf the purchase or real estate under the ban of that portion of the statute of frauds reading as follows?

"In the following cases specified in this section, *any agreement,* contract and promise *shall be void,* unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: ................................................ *an agreement* authorizing or *employing* an *agent* or *broker* to sell or *purchase* real estate for compensation or a commission." Rem. Rev. Stat., § 5825 [P. C. § 7745]. (Italics ours.)

Appellant and respondents direct our attention to the annotation, commencing at page 10, in Vol. 42, A. L. R., in which the editor has collated the decisions

arising out of the situation which exists where one who has orally promised to buy property for another buys it and keeps it for himself.

It is stated at page 28 of that annotation that there is a conflict of opinion as to whether an agent verbally employed to buy land for another, but who purchases it for himself with his own funds, may be compelled to convey it to his principal. The editor observes that some courts seem to have felt that to admit oral proof that the purchase was to have been made for another is virtually to abrogate the statute of frauds, while others regard the agreement as creating a relationship of trust and confidence, a violation of which will give rise to a constructive trust, to which the statute of frauds does not apply. The argument contained in the authorities cited by the editor against the existence of a constructive trust is that there is nothing more than a breach of contract, which is not such fraud as will give rise to a constructive trust. The counter argument is that the breach of the agreement discloses that the agreement was made by the agent with actual fraudulent intent to obtain the property for himself.

*Matney v. Yates*, 121 Va. 506, 93 S. E. 694, is cited as authority sustaining the position that one who has orally agreed to purchase lands for another and who has instead purchased them for himself can be compelled to convey them to his principal. The observations of the court in the opinion in that case were not necessary to the decision, and the case is distinguishable on the facts, which are as follows, from the case at bar: Walter Matney and Richard Yates acquired jointly in fee simple by grant from the state of Virginia two tracts of land containing, respectively, 241 and 166 acres. In 1879, those two patentees made an oral partition whereby Matney was allotted the tract of 241 acres and Yates the tract of 166 acres. The parties

immediately took possession of their respective tracts, which they and those claiming under them had ever since held. Matney and Yates made deeds to each other confirming the partition, which deeds were duly executed, delivered, and recorded. The original deeds and the records of same were destroyed by fire in 1885.

The complainants, under numerous mesne conveyances, acquired title to the Matney tract of 241 acres. Because complainants' (heirs of Walter Matney) evidence of title had been destroyed by fire, they entered into a contract with Richard Yates, Jr., who agreed to obtain releases for the complainants from all the heirs of Richard Yates, Sr. Yates, Jr., proceeded to procure releases in his own name, thereafter violated his contract and committed a breach of trust by continuing to hold the title in his own name, refusing to make any conveyance to the complainants. Complainants prayed that a commissioner be appointed to make deeds to the present owners in lieu of the deeds that had been destroyed, and that Yates, Jr., be required to execute to the present owners of the tract of 241 acres a release deed for all the interest acquired by him from the heirs of Yates, Sr. Demurrer to the complaint was sustained.

On appeal, the judgment was reversed, the supreme court holding that the defense that the complainants are undertaking to enforce an oral contract made between them and Yates, which is not in writing and therefore invalid, is not good; that the allegations that the complainants are claiming the ownership of the 241-acre tract, and that, as successors in title of the original owners, they have succeeded in possession of the land which has continued ever since the oral partition in 1879, shows a very substantial and an entirely sufficient interest in the land in controversy and easily

brings the case within the principle of constructive trust.

The action was nothing more and nothing less than a bill in equity to set up a lost deed. That case involved something more than the mere breach of an oral agreement to purchase lands for another. In the course of the opinion, the court said that the confusion and conflict, among the cases upon the question whether an agent verbally employed to buy land for another and who purchases in his own name and with his own funds, and then repudiates the agency, may be compelled to convey to the principal, arise:

". . . from a failure to apply to every case the test of the very simple question, was the contract in its essence and effect one of agency, or was it one for the purchase of real estate? If it was the former, it creates a trust relation, is not within the statute of frauds, and can be established by parol; if the latter, the parties are to that extent dealing with each other as principals and the contract is within the statute and can only be established by such writing as will meet the requirements thereof." *Matney v. Yates,* 121 Va. 506, 93 S. E. 694.

In discussing the question whether an oral contract, like the one in the case at bar, in its essence and effect is one of agency, hence not within the statute of frauds, or the contract is one for the purchase of real estate and within the statute of frauds, the editor of the Annotation in 42 A. L. R., pp. 10 to 126, inclusive, cites the following cases as holding that one who has orally agreed to purchase lands for another, and who has instead purchased them for himself, cannot be compelled to convey them to his principal:

*Garrow v. Davis,* 15 How. (U. S.) 272, 14 L. Ed. 692; *Oden v. Lockwood,* 136 Ala. 514, 33 So. 895; *Dooley v. Pinson,* 145 Ala. 659, 39 So. 664; *Mitchell v. Wright,* 155 Ala. 458, 46 So. 473; *Hackney v. Butts,* 41 Ark. 393;

*Worthen Co. v. Vogler,* 145 Ark. 161, 224 S. W. 626; *Parramore v. Hampton,* 55 Fla. 672, 45 So. 992; however, compare *Boswell v. Cunningham,* 32 Fla. 277, 13 So. 354, 21 L. R. A. 54; *Burden v. Sheridan,* 36 Iowa 125, 14 Am. Rep. 505, which should be compared to *Havner Land Co. v. MacGregor,* 169 Iowa 5, 149 N. W. 617; *Fowke v. Slaughter,* 3 A. K. Marsh. (Ky.) 56, 13 Am. Dec. 133; *Griffin v. Coffey,* 9 B. Mon. (Ky.) 452, 50 Am. Dec. 519 (obiter); *Hocker v. Gentry,* 3 Met. (Ky.) 463; *Day v. Amburgey,* 147 Ky. 123, 143 S. W. 1033; *Willis v. Lam,* 158 Ky. 777, 166 S. W. 251; *Kimmons v. Barnes & Metcalfe,* 205 Ky. 502, 266 S. W. 891, 42 A. L. R. 5; *Barrow v. Grant's Estate,* 116 La. 952, 41 So. 220; *Dorsey v. Clarke,* 4 Harr. & J. (Md.) 551; *Collins v. Sullivan,* 135 Mass. 461 (obiter); *Kennerson v. Nash,* 208 Mass. 393, 94 N. E. 475; *Raub v. Smith,* 61 Mich. 543, 28 N. W. 676, 1 Am. St. 619, which should be compared to *Wales v. Newbould,* 9 Mich. 45, which may be explained as turning on the special relation of the parties. *Dougan v. Bemis,* 95 Minn. 220, 103 N. W. 882, 5 Ann. Cas. 253; *Gibson v. Foote,* 40 Miss. 788; *Miazza v. Yerger,* 53 Miss. 135; *Allen v. Richard,* 83 Mo. 55; *Wallace v. Brown,* 10 N. J. Eq. 308; *Nestal v. Schmid,* 29 N. J. Eq. 458; but compare *Rogers v. Genung,* 76 N. J. Eq. 306, 74 Atl. 473, and *Harrop v. Cole,* 85 N. J. Eq. 32, 95 Atl. 378, affirmed in 86 N. J. Eq. 250, 98 Atl. 1085; *Wheeler v. Reynolds,* 66 N. Y. 227, *Bauman v. Holzhausen,* 26 Hun (N. Y.) 505; *Wheeler v. Hall,* 54 App. Div. 49, 66 N. Y. Supp. 257; *Peebles v. Reading,* 8 Serg. & R. (Pa.) 484; *Robertson v. Robertson,* 9 Watts (Pa.) 32; *Kellum v. Smith,* 33 Pa. 158; but see *Morey v. Herrick,* 18 Pa. 123; *Cushing v. Heuston,* 53 Wash. 379, 102 Pac. 29; *Nash v. Jones,* 41 W. Va. 769, 24 S. E. 592; *Bartlett v. Pickersgill,* 102 Eng. Reprint 952, note; *Horsey v. Graham,* L. R. 5 C. P. 9; but compare *Taylor v. Salmon,* 4 Myl. & C. 134, 41 Eng.

Reprint 53; *Cave v. Mackenzie,* 46 L. J. Ch. (N. S.) 564; and *Heard v. Pilley,* L. R. 4 Ch. 548.

The following cases are cited by the annotator in support of the proposition that the statute of frauds does not preclude the establishment by oral evidence of an agency to purchase land; and that a purchase in violation of the duty thus assumed gives rise to a constructive trust, or, as it is sometimes termed, a trust *ex maleficio:*

*Hellenthal v. Sloane,* 5 Alaska 362; *Zeckendorf v. Steinfeld,* 12 Ariz. 245, 100 Pac. 784; *Church v. Sterling,* 16 Conn. 388; see *Boswell v. Cunningham,* 32 Fla. 277, 13 So. 354, 21 L. R. A. 54, as explained in *Thomas v. Goodbread,* 78 Fla. 278, 82 So. 835; but compare *Parramore v. Hampton,* 55 Fla. 672, 45 So. 992; *Chastain v. Smith,* 30 Ga. 96 (which, however is disapproved in *Roughton v. Rawlings,* 88 Ga. 819, 16 S. E. 89, and *Houston v. Farley,* 146 Ga. 822, 92 S. E. 635); *Holmes v. Holmes,* 106 Ga. 858, 33 S. E. 216; *Mitchell v. Colglazier,* 106 Ind. 464, 7 N. E. 199; *Havner Land Co. v. MacGregor,* 169 Iowa 5, 149 N. W. 617 (where the agency and the fraud were admitted by demurrer —distinguishing *Burden v. Sheridan,* 36 Iowa 125, 14 Am. Rep. 505, on the ground that there the defendant denied the agency, thereby putting the plaintiff to proof which could not be made because of the Statute of Frauds); *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145; *Inderlied v. Campbell,* 119 Me. 303, 111 Atl. 333; *Wales v. Newbould,* 9 Mich. 45 (where, however, the parties were husband and wife). The contrary rule is followed in *Raub v. Smith,* 61 Mich. 543, 28 N. W. 676, 1 Am. St. 619; *Johnson v. Hayward,* 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 12 Ann. Cas. 800, 5 L. R. A. (N. S.) 112; *Morrison v. Hunter,* 74 Neb. 559, 105 N. W. 88; *Rogers v. Genung,* 76 N. J. Eq. 306, 74 Atl. 473 (reversing 75 N. J. Eq. 13,

71 Atl. 230); *Harrop v. Cole*, 85 N. J. Eq. 32, 95 Atl. 378 (decree affirmed in 86 N. J. Eq. 250, 98 Atl. 1085); but compare *Wallace v. Brown*, 10 N. J. Eq. 308, and *Nestal v. Schmid*, 29 N. J. Eq. 458; *Rush v. McPherson*, 176 N. C. 562, 97 S. E. 613; *Schmidt v. Beiseker*, 14 N. D. 587, 105 N. W. 1102, 116 Am. St. 706, 5 L. R. A. (N. S.) 123; *Newton v. Taylor*, 32 Ohio St. 399; *Topper Bros. v. Bohn*, 12 Ohio N. P. (N. S.) 177; *Powell v. Adler*, 69 Okla. 291, 172 Pac. 55; *Powell v. United Mining & Milling Co.*, 107 Okla. 170, 231 Pac. 307; *Morey v. Herrick*, 18 Pa. 123; but compare *Peebles v. Reading*, 8 Serg. & R. (Pa.) 484; *Robertson v. Robertson*, 9 Watts (Pa.) 32; *Kellum v. Smith*, 33 Pa. 158; *Brookings Land & Trust Co. v. Bertness*, 17 S. D. 293, 96 N. W. 97; *Morris v. Reigel*, 19 S. D. 26, 101 N. W. 1086; *Bailey v. Colombe*, 45 S. D. 443, 188 N. W. 203; *Guinn v. Locke*, 1 Head (Tenn.) 110; *Woodfin v. Marks*, 104 Tenn. 512, 58 S. W. 227; *Thompson v. Thompson*, 54 S. W. (Tenn.) 145; *Sparks v. Taylor*, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; *Halsell v. Wise County Coal Co.*, 19 Tex. Civ. App. 564, 47 S. W. 1017; *Henderson v. Rushing*, 47 Tex. Civ. App. 485, 105 S. W. 840; *Salter v. Gentry*, 61 Tex. Civ. App. 526, 130 S. W. 627; *Wellford v. Chancellor*, 5 Gratt. (Va.) 39; *Jackson v. Pleasanton*, 95 Va. 654, 29 S. E. 680; *Roller v. Spilmore*, 13 Wis. 26; *Taylor v. Salmon*, 4 Myl. & C. 134, 41 Eng. Reprint 53; *Cave v. Mackenzie*, 46 L. J. Ch. (N. S.) 564; *Heard v. Pilley*, L. R. 4 Ch. 548; but compare *Bartlett v. Pickersgill*, 102 Eng. Reprint, 952, note; and *Horsey v. Graham*, L. R. 5 C. P. 9.

■ The weight of authority is to the effect that an agent verbally employed to buy land, or to negotiate the purchase of same, for another, but who purchases it for himself with his own funds, cannot be compelled to convey that land to his principal.

"By the weight of American authority, a mere parol

agreement to purchase land for another does not create such a fiduciary relation that the promisor will be declared a constructive trustee if he purchases for himself with his own money . . . The mere parol agreement to buy for another does not create such a relation of trust and confidence that equity should interfere to do justice in case of a breach of the agreement." 1 Perry on Trusts (7th ed.), 361, § 206.

"In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute." 3 Pomeroy's Eq. Jur. (4th ed.), 2412, § 1056.

The mere promise by one, without more, to purchase land for another, is not a contract out of which a court of equity will raise a trust when the agent buys the land and pays for it with his own money and takes the deed to himself, was the holding in *Mitchell v. Wright*, 155 Ala. 458, 46 So. 473.

In *Oden v. Lockwood*, 136 Ala. 514, 33 So. 895, the defendant orally agreed to purchase certain lands for the plaintiff and to have the title made to the latter. Demurrer to the complaint was sustained, and on appeal judgment of dismissal was affirmed, on the ground that the agent's purchase of the land for himself with his own funds, contrary to his oral agreement to buy the land for the plaintiff, did not make of that agent a trustee *ex maleficio* for the plaintiff.

In *Worthen Co. v. Vogler*, 145 Ark. 161, 224 S. W. 626, the court held that a parol agreement to purchase property from the purchasers at a commissioner's sale at a mortgage foreclosure and to hold it in trust for

the mortgagor was within the statute of frauds. The court said:

"A trust *ex maleficio* can not be established merely upon a broken promise to purchase lands for another, there being no positive fraud perpetrated other than the breach of the promise."

In *Bauman v. Wuest,* 32 Cal. App. 217, a party orally employed another to secure a lease of certain real property for him with the understanding that, if the lease could not be procured to be made directly to him, the agent should, if possible, secure the lease in his own name and then transfer it to his principal. The agent secured it in his own name and denied the trust. Holding that the principal could not compel the agent to transfer the lease to him, as he had not parted with any consideration and such parol agency was in violation of the provision of the statute of frauds requiring the agreement to be in writing, the court said:

"An agency attempted to be created by parol, in violation of the provisions of the statute of frauds, is not sufficient to impose a trust in a case where the principal who seeks its enforcement has parted with no consideration." [Syllabus.]

*Hellenthal v. Sloane,* 5 Alaska 362, holds that, where a person, desiring to purchase real estate, employs by parol another to negotiate the purchase of the real estate for him, and that other commences such negotiations, but in violation of his duties as agent purchases the property for himself with his own money and takes title thereto in his own name, such agent is a trustee by operation of law, notwithstanding the statute of frauds.

To the same effect are *Church v. Sterling,* 16 Conn. 388, and *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145. In the last case cited, it was held that

one orally employed to negotiate for the purchase of certain property, who, in violation of his duties to his principal, purchased for himself, taking title in his own name, holds as trustee, and that the statute of frauds did not preclude the enforcement of such trust. The Kansas statute of frauds and the statute relating to trusts and powers are so worded that *Rose v. Hayden* is distinguishable from the case at bar.

See *Grantham v. Conner*, 97 Kan. 150, 154 Pac. 246, in which it was held that

"A parol agreement between one who has obtained an option to purchase a tract of land and another, that the latter would buy the land, pay the full purchase price of it and also the amount paid by the first party to obtain the option, taking the title in his own name, and that he would, when the land was sold, pay the first party one-half of any increase that might be paid for the land, did not create a valid express trust in favor of the first party; and since no part of the purchase price was paid by him, a trust did not arise in his favor by implication of law under section 8 of the act relating to trusts and powers (Gen. Stat. 1909, § 9701)." [Syllabus.]

*Boswell v. Cunningham*, 32 Fla. 277, 13 So. 354, 21 L. R. A. 54, cited in support of the proposition that a purchase in violation of the duty assumed by an oral agreement of an agency to purchase land gives rise to a constructive trust or a trust *ex maleficio*, is not in point. In that case, a firm of real estate brokers were employed to purchase certain land. The brokers took title to the land in themselves while the purchaser was absent in an endeavor to raise money to complete the purchase. The brokers used a payment made by their employer in paying for the property. The court held that a trust arose by operation of law which might be established by parol. Twenty-six years later the supreme court of Florida, in *Thomas v. Goodbread,*

78 Fla. 278, 82 So. 835, commented on the foregoing case as follows:

"It is well to note that in this case the principal had paid a portion of the purchase money, that the agents were regular real estate agents and were employed in the line of their usual business, and presumably for the usual commission or charge made by them. Hence the case could hardly be considered as authority for the proposition that in all cases where one has been engaged by parol to purchase land for another, and instead of so purchasing takes the title in his own name and pays for it with his own money, he should be charged as trustee for the benefit of such other. On the contrary, in a much later case, to-wit: that of *Parramore v. Hampton*, 55 Fla. 672, 45 South. Rep. 992, this court declined to apply the doctrine of constructive trust. In this case it seems that one of the defendants owned a half interest in the real estate and the other two defendants owned the other half interest, and that the one who owned the half interest agreed with the complainants to purchase the other half interest owned by the two other defendants for the benefit of complainant and such defendant, but failed to carry out his agreement with complainant and purchased the said half interest for his own benefit alone. The complainant paid no part of the purchase money, owned no interest in the land, so far as the opinion discloses defendant was not to receive any consideration for his services. It was a simple parol promise to purchase the property for the joint account of himself and complainant. We quote from the opinion, beginning on page 679, as follows: 'He does not own any legal interest whatever in the property and does not set up any contract rights therein. Hampton is not and was not his agent in any sense in the management or control of said property, and occupied no fiduciary relation of any sort to Parramore with respect to the property. The whole property belonged to Hampton and the Tedders. Not a cent of Parramore's money went into the purchase of the option from the Tedders by Hampton. We are referred to no authority and have seen none which holds that a con-

structive or resulting trust is established by such circumstances as these. It is not every case of a breach of contract or promise that a court of equity will construe into a constructive or resulting trust. If Parramore had actually furnished the money for the purchase of the Tedder interest and it had been used by Hampton for that purpose, and he had bought in his own name, or if Hampton stood in some sort of fiduciary relation to Parramore with respect to this property, a different case would be presented.' Citing Tiffany & Bullard on Trust and Trustee, page 28, *et seq.;* Underhill on Trust and Trustee, pages 160-175, and *Patrick v. Kirkland,* 53 Fla. 768, 43 South. Rep. 969."

*Parramore v. Hampton,* 55 Fla. 672, 45 So. 992, holds that, where one who had only a half interest in real property orally agreed with another to purchase the other half interest for such other person's benefit, but instead purchased it for himself, as such other person did not furnish the consideration for the transfer, there was no fiduciary relation between the parties and was neither a resulting nor a constructive trust.

*Quinn v. Phipps,* 93 Fla. 805, 113 So. 419, 54 A. L. R. 1173, holds that, if a real estate broker be employed by parol to negotiate the purchase of land for his principal and violates the principal's confidence by purchasing the land with his own money and a deed therefor to himself, he becomes a constructive trustee for the principal's benefit, upon payment of the purchase price. Citing as sustaining authority *Chastain v. Smith,* 30 Ga. 96, the supreme court of Florida stated "the Georgia statute of frauds is similar to ours." *Quinn v. Phipps, supra,* is distinguishable from the case at bar, as the supreme court of Florida treated the trust as a resulting trust, which, in *Chastain v. Smith, supra,* the supreme court of Georgia said was "expressly excepted from the operation of the statute."

In *Chastain v. Smith,* 30 Ga. 96, it was held that, where one person agrees as agent to buy land for another and does buy it but takes the title in his own name, this title in his hands stands affected with a *resulting* trust for the benefit of the principal by operation of law, and the case is not within the statute of frauds. That holding, however, was not necessary to the decision of the case, as, in any event, there had been a part performance taking the agreement out of the statute. The holding on the first point was expressly disapproved in *Roughton v. Rawlings,* 88 Ga. 819, 16 S. E. 89, and in *Houston v. Farley,* 146 Ga. 822, 92 S. E. 635.

In *Houston v. Farley, supra,* two persons orally agreed that one of them (Farley) should be the purchaser of land at an administrator's sale, and that, when he received the deed, he would, upon payment to him by the other of a certain sum in cash and the delivery of certain notes for stated amounts payable at stated times in the future (the cash payment and principal of the notes aggregating a sum equal to the purchase price of the land), execute a bond conditioned to convey the land to the obligee on payment of the notes. The purchaser (Farley) refused to comply when Houston tendered the cash and notes, whereupon Houston brought a petition for specific performance of the oral agreement. The petition was dismissed on demurrer. The judgment of dismissal was affirmed. On appeal, the supreme court of Georgia held that equity will not decree specific performance of such an agreement, as, being oral, it was within the statute of frauds. The court said:

"A ground of the demurrer raises the point that the oral contract of which specific performance is sought is within the statute of frauds. The plaintiff contends that the statute does not apply to a case as alleged in the petition. He bases such contention on the dictum

of the first headnote in the case of *Chastain v. Smith,* 30 Ga. 96, that 'Where one person agrees, as agent, to buy land for another as his principal, and does buy it, but takes the title in his own name, this title in his hands stands affected with a resulting trust for the benefit of the principal by operation of law, and the case is not within the statute of frauds, resulting trusts being expressly excepted from the operation of the statute.' In discussing this ruling Beckley, C. J., said, in *Roughton v. Rawlings,* 88 Ga. 819 (16 S. E. 89): 'But the facts in *Chastain v. Smith* did not require the court to determine whether there was a resulting trust or not . . . Strike this fact out of the case, and there would have been a very different question before the court from that on which the decision could be upheld with this fact in it. The case itself was decided correctly, but the reason suggested in the first headnote is not applicable to the facts as a whole, nor sustainable.' There is a clear distinction between cases where equity will enforce a trust at the instance of a principal against his agent who, being commissioned to buy a piece of property, does buy it and takes title in his own name, and cases where a trust results solely by operation of law. In the former case the agent will be compelled to transfer to the principal the benefit of his contract, upon repayment of the purchase-money and necessary expenses. *Forlaw v. Augusta Naval Stores Co.,* 124 Ga. 261 (6) 262 (52 S. E. 898). A resulting trust which arises solely from the payment of the purchase-price is not created unless the purchase-money is paid either before or at the time of the purchase. *Hall v. Edwards,* 140 Ga. 765 (79 S. E. 852). When the person who sets up a resulting trust has in fact paid no part of the purchase-money he will not be allowed, under the statute of frauds, to show by parol that the purchase was made for his benefit. No resulting trust can arise from the payment of money after the purchase has been completed. The plaintiff is not contending that the defendant was to purchase the property in the plaintiff's name, but that the defendant, having purchased the land, would sell it to him on credit according to stipulated terms. Such a contract is within the statute of frauds, which

requires every contract for the sale of lands or any interest in or concerning them to be in writing and signed by the party to be charged therewith or some person by him duly authorized. Nor is such contract, under the allegations of the petition, enforceable on the doctrine of trust, or on the ground of fraud and part performance."

In *Holmes v. Holmes,* 106 Ga. 858, 33 S. E. 216, which, however, was decided eighteen years prior to *Houston v. Farley, supra,* the supreme court of Georgia held that, when one person, as agent, agrees to buy land for his principal but takes the deed to himself, the title in the agent's hands stands affected with a *resulting trust* in favor of his principal by operation of law.

*Stevenson v. Thompson,* 13 Ill. 186, holds that a verbal agreement to purchase land for the benefit of another is void under the statute of frauds and can not be enforced against the purchaser who, in the absence of fraud, has paid for the land with his own money and taken the conveyance in his own name.

*Mitchell v. Colglazier,* 106 Ind. 464, 7 N. E. 199, does *not* support the proposition that one who orally agrees to purchase lands for another and who, instead, purchases them for himself, can be compelled to convey the lands to his principal. That was clearly a case of a resulting trust. The husband, acting for his wife, purchased land and made the cash payment therefor with her money but gave his own notes for the deferred payments and without her knowledge took the title to himself. The wife supposed the title to be in her name and furnished the money to pay the notes when they became due. Upon discovery that the title was in her husband, she demanded and received a conveyance to herself. This presents, as the court said:

" . . . . the ordinary case of a wife furnishing the money and paying for property which the husband, without her consent, has taken to himself. In such a case he holds it in trust for his wife, and a court of equity will protect it for her against his creditors."

In *Burden v. Sheridan,* 36 Iowa 125, 14 Am. Rep. 505, it was held that, where one man employs another by parol as agent to purchase real property for him, when the agent purchases the land in his own name and no part of the purchase money is paid by the principal and the agent denies the trust, he can not be compelled to convey the land to his principal, since the statute of frauds requires any contract for the creation or transfer of an interest in lands to be in writing. See, also, *Richardson v. Haney,* 76 Iowa 101, 40 N. W. 115, to the effect that it is incompetent to establish by parol evidence a trust in real estate alleged to have been established by verbal agreement.

In *Havner Land Co. v. MacGregor,* 169 Iowa 5, 149 N. W. 617, defendant demurred to a complaint alleging that he was employed by plaintiff to purchase a tract of land for a stated compensation; that the owner of the land made a proposition to sell, which plaintiff instructed defendant (plaintiff's agent) to accept, but that defendant entered into a contract for the purchase of the land in his own name, making the first payment thereon with his own money, and thereafter refused to assign his interest in the property to the plaintiff, his principal. Defendant demurred to the complaint, on the ground that the averments of the complaint show an agreement creating an interest in and to transfer real estate which is not shown to be in writing and is contrary to the statute of frauds. The court held that, as the agency and the fraud were all admitted by the demurrer, the demurrer was properly overruled, distinguishing *Burden v. Sheridan,*

*supra,* on the ground that, there, the defendant denied the agency, thereby putting the plaintiff to proof, which could not be made because of the statute of frauds.

*Inderlied v. Campbell,* 119 Me. 303, 111 Atl. 333, holds that an oral agreement to obtain a lease or purchase real estate for another and in the principal's name need not be in writing. However, the court held that an oral agreement to obtain and assign a lease is within the statute of frauds, as the assignment of a lease is a contract concerning an interest in land.

*Kennerson v. Nash,* 208 Mass. 393, 94 N. E. 475, holds that, where one who has orally agreed to buy land as an agent for another betrays his trust and buys it in his own name for his own account, the statute of frauds prevents the principal from maintaining a bill in equity to have his agent decreed to hold the land for the principal. See, also, *Flickett v. Durham,* 109 Mass. 419.

In *Raub v. Smith,* 61 Mich. 543, 28 N. W. 676, 1 Am. St. 619, it was held that not only a verbal contract for sale of land, but a verbal agreement by one to purchase an interest in land for another, is void. See, also, *Levy v. Brush,* 45 N. Y. 589; *Rawdon v. Dodge,* 40 Mich. 697; *Dougan v. Bemis,* 95 Minn. 220, 103 N. W. 882, 5 Ann. Cas. 253; *Gibson v. Foote,* 40 Miss. 788.

*Snyder v. Wolford,* 33 Minn. 175, 22 N.W. 254, 53 Am. Rep. 22, which is clearly distinguishable from the case at bar, holds that an oral agreement by which one is to negotiate the purchase of land, and the other is to pay the price and take title and when the other shall sell, the profits shall be divided between them, is not within the statute of frauds.

In that case, the plaintiff ascertained that a certain piece of land could be purchased at the price of three

thousand dollars. He orally agreed with defendant that he would negotiate the purchase of the land at that price for the defendant, the latter to pay the purchase price and take a conveyance of the land, and when the defendant sold the land the profits should be divided equally between the defendant and the plaintiff. The purchase was made, and the land was conveyed to the vendor through the defendant, who, some years later, sold the land at a large profit. Action was taken to recover one-half of the profit. Manifestly, the agreement did not contemplate that the plaintiff, who was the agent who negotiated the purchase, should have any estate or interest in the land or be interested in any way in the transaction unless upon a sale there should be a profit, then only in the profit and to the extent of one-half thereof. If there should be no profit, he would not get anything. If there should be a loss, he would lose only his time and trouble in making the purchase for the defendant. The agreement was one of employment or agency, and not one for an interest in real estate. The court said:

"No trust in respect to the profits existed other than such as arises upon the receipt by one of money which he has agreed to pay on such receipt to another."

In *Krzysko v. Gaudynski*, 207 Wis. 608, 242 N. W. 186, it is held that one employed as an agent under an oral contract to negotiate for purchase of real estate for another, and such agent purchases the property with his own funds taking title to the land in his own name, *creates a constructive trust under* the *statute relating to trusts* that must be expressed in writing, *which excepts trusts which arise from operation of law,* and such contract need not be expressed in writing to be enforceable. The court said:

"Whether the defendant can be held as a constructive trustee as an agent depends on whether his con-

tract of agency, not being in writing and not in conformity with sec. 240.10, should be considered as wholly void and imposing no duty whatsoever upon him. Appellants contend it should be so construed. Sec. 240.10, however, does not require that such a construction be placed upon it. Its declaration is not that a contract of agency, but a contract *'to pay a commission'* is void unless in writing. The purpose of the statute was not to relieve real estate agents from their obligations as agents, but to protect the public against frauds perpetrated by dishonest agents through falsely claiming oral contracts of agency when another agent effected a sale by which the landowner was subjected to claims for commission by two or more agents, and by falsely claiming agency and claiming a commission for procuring a purchaser when no *bona fide* purchaser was in fact procured. One may become an agent without compensation. Absence of compensation is immaterial. *Wright v. Smith,* 23 N. J. Eq. 106, 111. If a real-estate agent actually agrees orally to purchase land for another and takes money from the other to make the first payment on the purchase price, he must be held to have assumed to act for the other. And having assumed so to act, he should be held to the same obligations of duty as if he were acting under a contract binding the other party to pay him a compensation. Counsel for respondents concede that, apart from the question of the validity of the contract of agency, the authorities are to the effect that the agent is bound as trustee, (A) one line of cases so holding him when the principal furnished the money for the purchase, and (B) the other line so holding him regardless of this, some (a) upon the ground that the agreement is not a contract to convey realty because it was not contemplated the agent should take the title in himself, and (b) others on the ground of the fiduciary relationship between the principal and agent. *Burden v. Sheridan, supra; Nagengast v. Alz,* 93 Md. 522, 49 Atl. 333, and *Whiting v. Dyer,* 21 R. I. 278, 43 Atl. 181, are cited by them in support of (A); *Schmidt v. Beiseker,* 14 N. Dak. 587, 105 N. W. 1102, in support of (B) (a); and *Harrop v. Cole,* 85 N. J. Eq. 32, 95 Atl. 378, and *Johnson v. Hayward,* 74 Neb. 157,

103 N. W. 1058, 107 N. W. 384, in support of (B) (b). *Wright v. Smith,* 23 N. J. Eq. 106, *Gardner v. Ogden,* 22 N. Y. 327, *Davoue v. Fanning,* 2 Johns. Ch. 252, *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554, and *Wood v. Rabe,* 96 N. Y. 414, are outstanding cases cited by counsel for respondents supporting (B) (b), as is *Trice v. Comstock,* 121 Fed. 620, 61 L. R. A. 176.

"A note in 42 A. L. R. 28, under the heading 'Agreements to negotiate purchase as agent,' classifies the decisions of the different states upon the question of the obligation of an agent under oral contract who purchases real estate in his own name in violation of his duty. The states are about equally divided, part holding the agent to be a trustee, and part holding him not so bound under the statute of frauds. Wisconsin is placed with those holding the agent as trustee, and the case of *Roller v. Spilmore,* 13 Wis. 26, is cited in support of the placement. In that case a deceased person had conveyed land in fraud of his creditors. The defendant was administrator of his estate and undertook without compensation to get back the property from the grantee for the benefit of the widow and heirs, and procured a conveyance of it to himself. He afterwards sold the property at a large profit. Suit was brought to hold him as trustee, and he was so held. The opinion of the court states that 'It is a settled principle of equity that where a person undertakes to act as an agent for another he cannot be permitted to deal in the matter of that agency upon his own account and for his own benefit. And if he takes a conveyance in his own name of an estate which he undertakes to obtain for another, he will in equity be considered as holding it in trust for his principal.' *Hubbard v. Burrell,* 41 Wis. 365, is to the same effect. The ground of the *Spilmore Case, supra,* was the confidential relationship of the defendant to the widow and children for whom he acted. Such a relationship exists between any agent and the principal for whom he acts."

In holding that an oral agreement between plaintiff and defendant that the latter purchase for the former the land of a third person and receive for his services

a stipulated sum is within the statute of frauds and can not be enforced, the supreme court of Missouri said, in *Allen v. Richard,* 83 Mo. 55:

"I am of the opinion that the contract attempted to be enforced was clearly within the statute of frauds. That statute forbids the bringing of any action 'to charge any person . . . upon any contract for the sale of lands, tenements, hereditaments or an interest in or concerning them . . . unless some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some other person by him thereto lawfully authorized.' Rev. Stat., 1879, sec. 2513. It is argued by plaintiff that this was only a contract of employment relating to real estate and not within the statute of frauds. Although there is an element of agency in the contract, the action itself, is grounded upon the special undertaking of the agent to buy a particular tract of land and have it conveyed to plaintiff at a stipulated price. The plaintiff seeks to charge him for violation of this undertaking and asks damages for breach of it in like manner as if he had undertaken to convey his own land instead of procuring the conveyance of another person's. The relation of employer and employe was incidentally established between the parties, but the action is not for the value of services rendered or return of the price thereof. If the defendant was suing for the value of his services actually rendered in behalf of plaintiff, the fact that the contract under which they were rendered was within the statute of frauds would constitute no defense. He could recover on a *quantum meruit.* Brown Stat. Frauds (4 Ed.) Sec. 118. In like manner the statute would be no defense if the plaintiff was suing for a return of the $50 or any part thereof, paid for services which were never rendered in compliance with contract. *Basford v. Pearson,* 9 Allen 387; *White v. Wieland,* 109 Mass. 291; *Moody v. Smith,* 70 N. Y. 598. In this sense a contract for services may be regarded as not within the statute.

"I think it will be found pretty generally held by the courts that the undertaking of any one to procure for another one an interest in or conveyance of a third

person's lands is within the statute of frauds, unless evidenced by written memorandum. *Mather v. Scoles,* 35 Ind. 2; *Martin v. Wharton,* 38 Ala. 637; *Bryan v. Jamison,* 7 Mo. 107; *Campbell v. Taul,* 3 Yerg. 548; *Horsey v. Graham,* L. R. 5 C. P. 9. I do not perceive how this conclusion can be affected by the fact that one of the parties is agent of the other for hire. I take it that it would be against the spirit and policy of the statute to relieve a person from all oral obligations to convey or create an interest in his own lands, but hold him liable on similar undertakings to create an interest in another person's lands.

"The naked contract itself being within the statute, I fail to find in the evidence any facts or circumstances recognized in equity as sufficient to take it out of the operation thereof, such as full performance by plaintiff, payment for land taken in the name of another, expenditures in improvements thereon, or change in condition in life so as to render it a fraud on the plaintiff to deny him the title or refuse him compensation in damages. *Winters v. Cherry,* 78 Mo. 344; *Adair v. Adair,* 78 Mo. 630; *West v. Bundy,* 78 Mo. 407. The cases cited by counsel for plaintiff do not support his action on the facts of this case. The plaintiff employed the defendant to buy a particular tract of land for him. But he has not on the faith of the contract paid any purchase money, received any possession or profits, or in any manner changed his pecuniary condition in life. For the compensation advanced to defendant he has his action for money had and received."

*Harrop v. Cole,* 85 N. J. Eq. 32, 95 Atl. 378, 86 N. J. Eq. 250, 98 Atl. 1085, distinguishes prior cases of the New Jersey court to the contrary, and holds that an agent verbally employed to negotiate for his principal the purchase of land, who in violation of such agreement purchases the land with his own money and takes the deed to himself, becomes a constructive trustee for the principal's benefit.

In *Johnson v. Hayward,* 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 12 Ann. Cas. 800, 5 L. R. A. (N.S.) 112,

it is held that an oral agreement whereby one person employs an agent to negotiate for the purchase of real estate is not a contract for the creation of an estate or interest in land or trust or power over or concerning lands, etc., within the meaning of the statute of frauds. Hayward, while under an oral contract of agency with Johnson to negotiate on behalf of the former for the purchase of certain real estate, negotiated therefor and bought the same for his own use and benefit, taking the title thereto in the name of his nephew, who later conveyed the land to the wife of the defendant in trust and for the use of her husband. The court said:

"The contract of agency upon which the plaintiff relies rests wholly in parol, and no part of the consideration which the agent Hayward paid for the land was advanced by the plaintiff, and the principal contention of the defendants in this case is that it falls within the provisions of section 3 of our statute of frauds (ch. 32, Comp. St.), which is as follows: 'No estate or interest in land, other than leases for a term not exceeding one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same.' Among other authorities supporting this contention are the following: *Burden v. Sheridan*, 36 Ia. 125; 2 Story, Equity Jurisprudence (13th ed.), secs. 1201, 1201*a*; 1 Perry, Trusts (5th ed.), sec. 135. The Iowa case just cited deserves more than a passing notice, because it is hardly distinguishable on principle from the case at bar. As in this case the contract of agency was oral, and the principal had advanced no part of the consideration for the land. The court held that the contract, being oral, came within the section of the statute of frauds of that state corresponding with that section of our own statute just quoted, and that, no part of the

consideration having been paid by the principal, the case did not fall within another provision, which provides that the section referred to shall not apply where the purchase money, or any portion thereof, has been received by the vendor. In the absence of an express statutory provision, part payment of the purchase price in and of itself is not regarded as such part performance of an oral contract as will relieve against the statute. It seems to us that in the defendants' argument, as well as in the authorities cited in support of it, there is a failure to distinguish between those cases where an estate or interest in land, or some trust or power over or concerning lands, is one of the considerations of the contract, and is required as a direct result thereof, and those where such estate, interest, trust or power is not such consideration, and is not acquired as a direct result of the contract, but which arises as a remote result of the contract and from an abuse of the relations thereby established. It is not claimed by the plaintiff that at the time he made his contract with Hayward he thereby acquired any title, legal or equitable, to the land, or that any trust or power over or concerning the land was thereby created. On the contrary, the most he claims for that contract is that it created between him and Hayward the relation of principal and agent. The land itself, or any interest or trust or power over and concerning the land, was no part of the consideration moving from either party to the other. The consideration which the plaintiff agreed to pay was the value of Hayward's service, and the consideration moving from Hayward was the service he undertook to render as the plaintiff's agent. That an oral contract creating an agency, although for the purchase or sale of real estate, is valid, is clearly established by the authorities."

*Schmidt v. Beiseker,* 14 N. D. 587, 105 N. W. 1102, 116 Am. St. 706, 5 L. R. A. (N. S.) 123, holds that an oral contract to attend the sale of public lands and bid in certain property and to advance the necessary purchase money, which the other party agreed to repay

as soon as it should be ascertained, together with a further sum as compensation, was a contract of agency and not one relating to a sale of real estate within the statute of frauds. This falls within the classification of resulting trusts.

*Bailey v. Colombe*, 45 S. D. 443, 188 N. W. 203, holds that, where one is orally employed on commission to negotiate a purchase, he is a fiduciary and can not purchase for himself, though the principal paid neither the purchase price nor the commission for procuring the sale.

The cases sustaining the right of recovery upon an oral promise made between brokers and their agents or employees to divide commissions are neither within the language or spirit of the statute of frauds or the real estate brokers' statute, hence are not applicable to the facts presented by this appeal.

The insuperable obstacle to enforcement of respondents' oral promise to negotiate purchase of land for appellant is the provision of the statute (Rem. Rev. Stat., § 5825) of frauds that an *agreement employing an agent* or broker *to* sell or *purchase* real estate for compensation *shall be* void unless such agreement be *in writing* and *signed* by the party to be charged herewith. That provision applies to contracts between the owner of the land to be sold and the agent he employs to make or *negotiate* the sale, and that provision also applies to a purchaser of land or one desiring to purchase land and the agent he employs to make the purchase or negotiate the purchase for him. The statute declares, without qualification, that an oral agreement employing an agent or broker *to sell or purchase* real estate for compensation or a commission shall be void. If the legislature intended to limit the statute to contracts between brokers and sellers and intended to exclude contracts between brokers and purchasers,

it would have employed language different than that now in the statute.

That intent is so clearly and unambiguously expressed that there is no room for the office of construction; and no precedent should be held sufficiently strong to lead to a construction of this statute which does not give effect to the plain legislative intent.

"Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe." *Lewis v. United States,* 92 U. S. 618, 621, 23 L. Ed. 513.

"And if the words of the statute are in themselves precise and unambiguous no more is necessary than to expound these words in their natural and ordinary sense, the words themselves in such case best declaring the intention of the Legislature." *Maxwell, Interpretation of Statutes* (6th ed.), 1.

"A cardinal rule of statutory construction, followed by the courts, is that, where a statute is clear upon its face and is fairly susceptible of but one construction, that construction must be given. *Burdick v. Kimball,* 53 Wash. 198, 101 Pac. 845; *Tsutakawa v. Kumamoto,* 53 Wash. 231, 101 Pac. 869, 102 Pac. 766; *Pacific Match Co. v. Burroughs Adding Machine Co.,* 157 Wash. 434, 289 Pac. 16. Stated in another way, interpretation is unnecessary when the statute is plain and admits of but one meaning. *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433." *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360.

It is not necessary to resort to the real estate brokers' act (Rem. Rev. Stat., § 8340-4); however, when the statute of frauds is read in the light of that act, the clearly expressed intent of the legislature is emphasized.

Whether the agreement contemplated a conveyance of the land from Angel to the respondents, who in turn would convey the land to their principal (appellant) upon payment of the purchase price, or whether the

agreement was for respondents to negotiate with the owner of the land and induce that owner to make the conveyance direct to appellant, is no different, under the statute, in principle, than a contract between an owner of land and an agent he employs to make a sale through the agent or to convey, after negotiations by the agent with the buyer, direct to the buyer.

We held in *Richards v. Redelsheimer*, 36 Wash. 325, 78 Pac. 934, that the English statute of frauds is superseded by our statutory enactments, and that there is no distinction between an oral agreement to execute a lease of real estate and an oral lease; that both are within our statute of frauds, which provides that an oral lease of real estate for more than one year is void.

There is, as the editor of A. L. R. observes, a conflict of authority on the question whether, where an agent orally employed to negotiate purchase of land for another but who purchases it for himself and sells the land at a profit, a trust may be established for the principal's benefit in the proceeds received by such agent from his sale of the land.

The authorities uniformly hold that the agent purchasing the land will not be permitted to keep the property he has obtained where circumstances, apart from a mere breach of an oral agreement to convey to another, render it inequitable that he should do so. The same rule, of course, is applicable to the proceeds received by the agent from his sale of the land.

Does the agent's breach—a moral wrong—of his oral promise amount to legal fraud? There is a conflict among the cases upon the question whether the repudiation by the agent of his duty is such a circumstance as renders it inequitable that he retain the land or the proceeds he derives from sale of the land.

The general rule relating to promises and assertions of intention is stated as follows in 12 R. C. L. 254, § 21:

"The general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all. And as in the case of promises, it is generally held that mere assertions of intentions, or declarations of future purpose, do not amount to fraud."

While the breach of a mere verbal promise to purchase and convey land or negotiate as agent for the purchase of that land for a principal is a moral wrong, such breach is not a legal fraud, and, standing alone, is not a sufficient basis upon which to establish a constructive trust or a trust *ex maleficio*. We quote as apt, with reference to the conflict among the cases on the question presented, the following language from *Farrell v. Mentzer*, 102 Wash. 629, 174 Pac. 482:

"By no honest process of reasoning can the different decisions be harmonized or reconciled, and by no sophisticated reasoning should it be attempted to be done. . . . the statute of frauds is not an equitable doctrine, but is an absolute statute. . . . It may be that a strict application of the statute in some cases will operate to defeat a just claim, but that is not a sufficient reason for attempting to remove those cases from the operation of the statute."

In *Farrell v. Mentzer*, 102 Wash. 629, 174 Pac. 482, we observed that a great deal of the confusion in the

classification of trusts arises from the fact that some courts mistakenly hold that the breach of a contract constitutes fraud, and thereby attempt to convert the breach of an express contract which would raise an· express into a constructive trust created by fraud. We said:

"The logical result of such confusion would be to hold that the breach of every express contract would be the establishment of a constructive trust, and thus entirely obliterate express trusts. This point is well covered by Pomeroy as follows:

" 'The foregoing cases should be carefully distinguished from those in which there is a *mere* verbal promise to purchase and convey land. In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; *there must be an element of positive fraud accompanying the promise,* and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute; it endeavors to prevent and punish fraud, by taking from the wrong-doer the fruits of his deceit, and it accomplishes this object by its beneficial and farreaching doctrine of constructive trusts.' 3 Pomeroy, Equity Jurisprudence (3d ed.), § 1056."

In classifying the decisions of this court on the subject of trusts, we said, which language is just as applicable in the case at bar, in *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482:

"The decisions of this court fall into these groups: (1) Those cases where intentionally the parties, by express agreement, have created express trusts, which cannot be proved by parol even though the agreements have been breached; (2) those cases where parol evidence is admissible to prove express trusts by reason of such part performance by the *cestui que trust* as to

remove the case from the operation of the statute of frauds; (3) those cases of resulting trust where the purchase price has been paid by one and the title taken by another, or where an actual loan has been made by the trustee who holds the title as security, this trust being treated as a mortgage; (4) those cases of constructive trust which have arisen from fraud inhering in the transaction and arising contrary to the intention of the one holding the legal title; (5) those cases where it has erroneously been held that a constructive trust has arisen by the breach of an express contract, where there was no fraud in the transaction and the only bad faith was in the breach of the contract. Here there was an express agreement to do a certain and definite thing; no fraud existed in the making of the agreement, and the only fraud which is claimed was in the breach. Under the decisions which we have analyzed, this is not sufficient to raise a constructive trust. No payment having been made on the purchase price by the respondent, this case does not fall within the class of cases which this court has held were resulting trusts, for here title has not been taken by one party and payment made by another party, nor was a loan made by the appellants which the respondent was obligated to repay. Nor has there been any part performance by the respondent which would take the case out of the operation of the statute."

In *Croup v. DeMoss*, 78 Wash. 128, 138 Pac. 671, we held that an oral agreement to purchase an interest in real estate for the use and benefit of another is, standing alone, unenforcible under the statute of frauds. We there said:

"It is no answer to say that the failure to carry out such an agreement was a fraud opening the whole transaction to parol proof. To so hold would be to abrogate the statute and make every contract rest in parol proof upon a mere allegation of its breach. 1 Perry, Trusts (6th ed.), § 134. It is clear, therefore, that this agreement, assuming that it existed, created no trust in the mining claims, or in the title acquired by DeMoss through the deed from Scales, made in pur-

suance of the option, unless, from other circumstances, there was a trust arising or resulting by implication of law. If such a trust ever existed, it arose immediately upon the execution of the papers by which the title passed from Scales to DeMoss. It vested the instant the deed was taken, or not at all. It could not result from a prior oral agreement alone, or from subsequent payment or tender of the purchase price by the appellant. 1 Perry, Trusts (6th ed.), § 135; *Bowen v. Hughes*, 5 Wash. 442, 32 Pac. 98. It must have arisen, if at all, either by payment of the entire purchase price by the appellant at the time the option was taken up and the deed made, in which case the title to the entire one-fourth interest would be held in trust for the appellant, or it must have arisen *pro tanto* by the payment of an aliquot part of the purchase price by the appellant, in which case it would vest an equitable title to an aliquot part of the one-fourth interest proportional to such payment. *Guthrie v. Tullock*, 5 Wash. 283, 31 Pac. 871."

We held in *Richards v. Lockhart*, 173 Wash. 668, 24 P. (2d) 113, that a property settlement upon the separation of a husband and wife for the benefit of a son, fully performed by the wife, whereby the husband agreed to give the son a child's interest in his estate upon his death, did not establish a constructive trust in the son's favor when the husband died after devising his estate to other beneficiaries, where he was not actuated by bad faith with no intention of performing the property settlement at the time it was made; since the basis of a constructive trust is fraud, and a breach of a contract is not alone sufficient. We said:

"The question of when a constructive or resulting trust will arise has been frequently before this court, and has been many times fully discussed. We shall not here enter upon a restatement or discussion of the law with reference to such trusts. It will be assumed that, if from the facts alleged or any reasonable infer-

ence that might be drawn therefrom, it appears that, at the time Nelson B. Richards made the promises referred to as a property settlement, they were made in bad faith and without any intention of performing the same, a constructive trust would arise. Such trusts usually arise as a result of fraud, either actual or constructive. Where promises are made in a transaction in bad faith and with no intention to perform the same, they may be fraudulent. In order, however, for such promises to furnish the basis for a constructive trust, the fraud which they create must inhere in the original transaction. *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270; *Arnold v. Hall,* 72 Wash. 50, 129 Pac. 914, 44 L. R. A. (N. S.) 349; *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482."

In *Brown v. Kausche,* 98 Wash. 470, 167 Pac. 1075, we held that a devise by a husband of all the community property to his wife, under an oral agreement that she should use it during her life and hold it intact to be divided among the children, created an express trust which can not be proved by parol; and that, upon the widow's deeding the property to a son in violation of the oral agreement, there was no resulting trust or trust *ex maleficio* that could be established by oral evidence. We said:

"In the present case . . . no fraud inhered in the original transaction. If the trust sought to be proved by parol in those cases was an express trust, it necessarily follows that, in the case now before us, the trust sought to be established by oral testimony was likewise an express trust. It is true that, in each of those cases, the trust sought to be established was in favor of the grantor, while here it was in favor of third persons—the children of the testator and his wife. But this fact could make no difference in the application of the principle. If, in the cases referred to, the trust arose by act of the parties and not by operation of law, it necessarily follows that, in the present case, the trust arose in the same way, that is, out of

the oral arrangements between Mr. and Mrs. Kausche, and was therefore an express trust."

*Chamberlain v. Abrams,* 36 Wash. 587, 79 Pac. 204, is not distinguishable in principle from the case at bar. That was a case where defendant orally agreed to acquire title to certain lands and convey them to the plaintiff. We held that, as the agreement was not in writing, it was within the statute of frauds; hence, could not be enforced.

In *Cushing v. Heuston,* 53 Wash. 379, 102 Pac. 29, the purchaser of one of several lots breached an oral promise to attend to the matter of acquiring title to abutting tide lands for the benefit of the purchasers of other lots in the same block. The promisor had no funds or property in his hands belonging to the others, none was furnished, he did not agree to advance any for the contemplated purchase, and he was not to receive any compensation for the voluntary service. In acquiring the deed for himself, the grantors of the tide lands were not concerned as to what parties were to be benefited by the purchase, notwithstanding that it was reported that the purchaser was acting for the benefit of himself and his neighbors. We held that no element of positive fraud was involved, therefore a constructive trust did not arise from the verbal promise, and quoted with approval the following language from *Lehman v. Lewis,* 62 Ala. 129:

" 'Where a man employs another person by parol, as an agent, to buy an estate for him, and the latter buys it accordingly in his own name, and no part of the purchase-money is paid by the principal, then, if the agent denies the trust, and there is no written agreement or document establishing it, he cannot, by a suit in equity, compel the agent to convey the estate to him; for (as has been said) that would be decidedly in the teeth of the statute of frauds.' "

In the case cited, the agent was not to receive any compensation, which is the only feature distinguishing it from the case at bar. Under our real estate brokers' act and our statute of frauds, it is not material, we repeat, whether the agreement is to negotiate the purchase and have the land conveyed direct to the purchaser or whether, in the negotiations, the agent is to acquire the title and in turn convey the property to his principal.

Respondents' oral promise, as agents or brokers for promise of compensation, to purchase, or negotiate the purchase of, lands ·for appellant, imposed no liability upon the appellant, the promisee; nor was it binding upon the respondents, the promisors. Respondents may, in good faith, have asserted their intention to obtain the property for their principal. Their change of mind does not amount to a fraud. While the failure of performance of a promise may be without excuse or justification in morals, yet it is not cognizable as a fraud in law. The promise or statement of intention of the respondents to induce Angel to sell the property to appellant, standing alone, can not be construed as a fraudulent representation. At most, it is only an assertion of a present mental condition.

A constructive trust, or a trust *ex maleficio*, can not be established merely upon a broken promise to purchase, or to negotiate purchase of, as agent, lands for another, there being no positive fraud perpetrated other than the breach of the promise.

Some courts hold that the sounder view is that facts like those before us present a case for the application of the general principle that an agent must act with entire good faith and loyalty in dealing with the subject-matter of his agency and should be required to turn over the property, or the proceeds derived from its sale, to his principal. The weight of authority,

however (to which view we are committed, *Farrell v. Mentzer, supra*), is to the effect that the repudiation by the agent of his duty as agent, imposed by an oral agreement to purchase, or to negotiate purchase of, real estate for another, is not such a circumstance, nor does it constitute such fraud, as will give rise to a constructive trust or a trust *ex maleficio*. The failure of respondents to make their oral promise good constituted a breach of the oral agreement which must be enforced by an action on that agreement, if at all; and, as the statute declares such an oral contract to be void, no action may be maintained. Being a void contract, it is a mere nullity and is void as to every one whose rights would be affected by it if valid. 12 Am. Jur. 507, § 10.

*Peterson v. Hicks*, 43 Wash. 412, 86 Pac. 634, is not in point, as there was such a part performance of the oral agreement in question as to take it out of the operation of the statute of frauds.

In *Pierce v. Wheeler*, 44 Wash. 326, 87 Pac. 361, the question there involved was whether an agent had authority to execute a contract of sale.

While there is language in *Merriman v. Thompson*, 48 Wash. 500, 93 Pac. 1075; *Stewart v. Preston*, 77 Wash. 559, 137 Pac. 993, and *Ewing & Clark v. Mumford*, 157 Wash. 617, 289 Pac. 1026, which tends to support appellant's theory, the fraud perpetrated by the agent in those cases distinguishes them from the case at bar.

*Herkenrath v. Ragley*, 59 Wash. 52, 109 Pac. 279, is not in point. That was an action for money advanced by the respondent to the appellant for his use.

*McSorley v. Bullock*, 62 Wash. 140, 113 Pac. 279, does not involve real property.

*Hansen v. Hansen*, 110 Wash. 276, 188 Pac. 460, presents a situation under which a constructive trust

arises because of fraud inhering in the transaction. We held that a constructive trust arises from fraud inhering in the transaction and may be proved by parol, where the owner of mortgaged land which he had leased to his son was lulled into a sense of security by the promise of the son, who was indebted to him for rent, to redeem the mortgage from foreclosure proceedings and protect the title, which he failed to do and acquired title through the foreclosure by paying the mortgagee a sum less than the overdue rent.

*Jones v. Kehoe,* 61 Wash. 422, 112 Pac. 497, involved an oral agreement between brokers to divide commissions, hence is not in point. To the same effect is *Orr v. Perky Inv. Co.,* 65 Wash. 281, 118 Pac. 19. The opinion in that case unnecessarily restricted the statute to contracts between the owner of the land to be sold and the agent he employed to make the sale—no such question presented in the case.

*Orr v. Perkey Inv. Co.,* 65 Wash. 281, 118 Pac. 19, and *Leigh v. Yancey,* 67 Wash. 18, 120 Pac. 512, holding valid verbal agreements between real estate brokers to divide commissions, were distinguished in *Parker v. Bruggemann,* 72 Wash. 309, 130 Pac. 358, in which we held that an oral agreement for a broker's commission made by one who was equitably a joint owner of the property was unenforcible as falling within the statute of frauds requiring an agreement employing a broker to sell real estate to be in writing.

The judgment is affirmed.

BEALS, GERAGHTY, and SIMPSON, JJ., concur.

STEINERT, C. J. (dissenting)—My consideration of the majority opinion, in its entirety, convinces me that it is wrong. I think that the case falls squarely within the conceded principle expressed by the majority in the following language:

"The authorities uniformly hold that the agent purchasing the land will not be permitted to keep the property he has obtained where circumstances, apart from a mere breach of an oral agreement to convey to another, render it inequitable that he should do so. The same rule, of course, is applicable to the proceeds received by the agent from his sale of the land."

This case does not present "a mere breach of an oral agreement to convey to [or purchase for] another." If the allegations of the complaint be true, as the demurrer admits, then, in my opinion, it is a case of arrant fraud, and the "circumstances . . . render it inequitable" that the agent should "be permitted to keep the property" or retain "the proceeds received by the agent from his sale of the land." According to the complaint, respondent Alberts, under agreement to act as broker on commission to be paid by appellant, straightway proceeded to have himself engaged as broker for the owner of the land upon a commission to be paid by him. Then, false to both parties, he bought the property for himself, under an assumed name, at a price of two thousand dollars less than the amount which he was commissioned to pay for it and then sold it for two thousand dollars more than the initial principal's authorized price, thus inflicting a loss of two thousand dollars upon each of his principals and appropriating a neat profit of four thousand dollars plus a commission to himself. If that be not rank fraud, then I am unable to assign a word for it. A host of the authorities cited in the majority opinion sustain my view.

I dissent.